## THE STATE, EX REL. DAVIS, ETC., *v.* HILDEBRANT, SECRETARY OF STATE, ET AL.

*Congressional districts — Power to redistrict — Section 4, Article I, U. S. Constitution — Term "legislature" comprehends legislative power, including referendum — Sections 1 and 1c, Article II, Ohio Constitution, 1912 — Legislative act invalid if defeated by referendum, when — Effect of congressional apportionment act (37 U. S. Stats. at Large, 14) — Jurisdiction of courts — Judicial and political questions.*

1. The term "legislature," in Section 4, Article I of the United States Constitution, comprehends the entire legislative power of the state; and, as so used, includes not only the two branches of the general assembly but the popular will as expressed in the referendum provided for in Sections 1 and 1c of Article II of the Ohio Constitution.

2. If a congressional redistricting act, passed by the general assembly and lawfully submitted to a referendum for popular vote under the foregoing provisions, fails of approval by a majority of those voting upon the same, such act is invalid and inoperative.

3. Under the latter clause of Section 4, Article I of the United States Constitution, complete and plenary power over state legislation enacted thereunder rests in the federal congress, and its laws supersede all state regulations upon the same subject. Under its grant of power to "make or alter such regulations," congress did, by its apportionment act of August 8, 1911, legislate upon the subject, by recognizing as lawful such congressional districts as may be created in the manner provided by the laws of those states employing the constitutional referendum.

4. Where a ministerial officer assumes to act under a law or constitutional provision which is claimed to be invalid or of doubtful construction, although the election of an officer is indirectly involved, the subject-matter becomes one for judicial cognizance and is not political.

(No. 15160 — Decided April 18, 1916.)

In Mandamus.

This action was brought by the relator, David Davis, as a citizen of the United States and an elector of this state, and who is a resident and elector in Hamilton county, Ohio, seeking to invoke the original jurisdiction of this court in mandamus.

The salient and pertinent facts set forth in the petition are as follows: On May 27, 1915, the general assembly of the state passed an act, which was approved by the governor and filed in the office of the secretary of state on June 4, 1915, redistricting and apportioning the state into twenty-two congressional districts, of which portions of Hamilton county constituted the first and second districts. Prior to that time, by virtue of an act of the general assembly, the state had theretofore been redistricted and divided into twenty-two congressional districts under an act passed April 28, 1913, in which the districts, including the first and second, were geographically different from the later act of May 27, 1915.

Assuming to act under Article II, Section 1c, of the Constitution of Ohio, adopted in 1912, for the purpose of causing the later act, that of 1915, to be submitted to the people of the state for their approval or rejection, a petition containing the required number of signatures was filed with the secretary of state conformable to law, and at the general election following, on November 3, 1915, the act of May 27, 1915, was submitted to the electors of the state for their approval or rejec-

tion.  At such election, however, the same did not
receive the votes of, and was not approved by, a
majority of the electors voting on the same.

By reason of these facts it is alleged that the
defendant, Hildebrant, secretary of state and state
supervisor and inspector of elections, and his asso-
ciated defendants, who are deputy state super-
visors and inspectors of elections for Hamilton
county, now refuse and will continue to refuse to
hold elections in the year 1916 in the first and sec-
ond congressional districts composing Hamilton
county, as divided and described in the act of 1915,
which was submitted to referendum and failed of
approval by popular vote; that delegates and alter-
nates to political party conventions and political
party committeemen are required by law to be
elected at the elections ensuing in 1916, and fur-
thermore that candidates for congress are required
to be elected in the several lawful congressional
districts at such ensuing election.

It is alleged that the state and deputy state
supervisors and inspectors of elections, whose
duty it is to provide for the machinery and control
the elections, unless directed otherwise by the
court, will proceed in the conduct of elections in
the several districts under the act of 1913, although
it is their duty to conduct the same in the districts
as described in the act of 1915, which was sub-
jected to referendum as aforesaid.

It is further alleged in the petition that the
submission by referendum to the people of the act
of 1915 was void for the reason that the refer-
endum provisions comprised in Article II, Section

*1c,* of the Constitution of Ohio, could not affect or apply to an act of the legislature of Ohio districting or making an apportionment of the state of Ohio into congressional districts, and that the sole power therefor is lodged strictly in the state legislature, irrespective of the referendum so authorized and employed.

A writ of mandamus is prayed for, asking that the act of May 27, 1915, entitled "An act to amend Section 4828-1, General Code," etc., be held valid, that the referendum proceedings be declared invalid and that defendants be directed to hold, conduct and supervise the several district elections ensuing in the Hamilton county districts as territorially divided in the legislative act of May 27, 1915. The defendants challenge the sufficiency of the petition by a general demurrer.

*Messrs. Keifer & Keifer* and *Mr. Sherman T. McPherson,* for relators.

*Mr. Edward C. Turner,* attorney general; *Mr. T. S. Hogan; Mr. E. H. Moore; Mr. J. E. Campbell* and *Mr. A. G. Turnipseed,* for defendants.

*Mr. J. V. Campbell,* prosecuting attorney, and *Mr. Smith Hickenlooper,* assistant prosecuting attorney, for the deputy state supervisors and inspectors of elections for Hamilton county, answering defendants.

JONES, J. The question to be decided is succinctly stated in the brief of relator's counsel as follows:

"Whether or not the apportioning and redistricting act of May 27, 1915, was annulled by petition and referendum vote held under the constitution of Ohio."

For the proper determination of this question it is necessary to refer, for the purpose of construction, to the following provisions of the state and federal constitutions, and to the laws passed pursuant thereto, so far as they may be germane to the proposition involved.

Section 4 of Article I of the Constitution of the United States provides as follows:

"The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators."

Section 1 of Article II of the Constitution of Ohio, as amended September 3, 1912, is as follows:

"The legislative power of the state shall be vested in a general assembly consisting of a senate and house of representatives but the people reserve to themselves the power to propose to the general assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided. They also reserve the power to adopt or reject any law, section of any law or any item in any law appropriating money passed by the general assembly, except as hereinafter provided; and independent of the general assembly to propose amendments to the constitution and to adopt or reject the same

at the polls.   The limitations expressed in the constitution, on the power of the general assembly to enact laws, shall be deemed limitations on the power of the people to enact laws."

The sections immediately following provide for the initiative and referendum powers reserved to the people of the state and for the method in which such powers shall be exercised.

Section 1*c* of Article II of the Constitution of Ohio provides that —

"No law passed by the general assembly shall go into effect until ninety days after it shall have been filed by the governor in the office of the secretary of state, except as herein provided.   When a petition signed by six per centum of the electors of the state and verified as herein provided, shall have been filed with the secretary of state within ninety days after any law shall have been filed by the governor in the office of the secretary of state, ordering that such law, section of such law or any item in such law appropriating money be submitted to the electors of the state for their approval or rejection, the secretary of state shall submit to the electors of the state for their approval or rejection such law, section or item, in the manner herein provided, at the next succeeding regular or general election in any year occurring subsequent to sixty days after the filing of such petition, and no such law, section or item shall go into effect until and unless approved by a majority of those voting upon the same."

The act of congress of August 8, 1911, Chapter 5, Section 4, provides:

"That in case of an increase in the number of Representatives in any state under this apportionment such additional Representative or Representatives shall be elected by the State at large and other Representatives by the districts now prescribed by law until such State shall be redistricted in the manner provided by the laws thereof and in accordance with the rules enumerated in section three of this act; and if there be no change in the number of Representatives from a State, the Representatives thereof shall be elected from the districts now prescribed by law until such State shall be redistricted as herein prescribed." (37 U. S. Stats. at Large, 14.)

Section 5 of the same act provides:

"That candidates for Representative or Representatives to be elected at large in any State shall be nominated in the same manner as candidates for governor, unless otherwise provided by the laws of such state."

Does the term "legislature," as used in Article I, Section 4 of the Federal Constitution, comprehend simply the representative agencies of the state, composed of the members of the bicameral body, or does it comprehend the various agencies in which is lodged the legislative power to make, amend and repeal the laws of the state, including the power reserved to the people empowering them to "adopt or reject any law" passed by the general assembly under the provisions of Section 1, Article II of the Constitution of Ohio?

By the adoption of the constitution of 1912, as affecting the passage and finality of laws passed

by the general assembly, the people provided for certain checks upon both the legislature and the people.

Section 1*d* of Article II of the Constitution of Ohio provides that laws providing for tax levies and certain emergency laws, when passed by a yea and nay vote of two-thirds of all members elected to each branch of the general assembly, shall go into immediate effect and shall not be subject to the referendum imposed by the preceding section. As to all other laws passed by the general assembly, the people have reserved to themselves the power of adoption or rejection.

These various sections disclose that, while the legislative power has been delegated to the bicameral body composed of the senate and house of representatives, the people of Ohio have by the aforesaid provisions of their constitution determined the manner by which such legislative power may be exercised, under what circumstances the laws passed by it may become operative without an appeal to the people, and have further imposed the conditions under which such laws may become operative or inoperative as they may have been adopted or rejected by the popular vote designated as the "referendum."

While Article I, Section 4, of the United States Constitution is controlling upon the states in so far as it grants the legislature of the state authority to prescribe the times, places and manner of holding elections, this is the *quantum* of the federal grant. The character of the legislature, its composition and its potency as a legislative body

are among the powers which are, by Article X of said Constitution, "expressly reserved to the states respectively, or to the people."

Webster's New International Dictionary defines "legislature" as follows: "The body of persons in a state, or politically organized body of people, invested with power to make, alter and repeal laws."

The Century Dictionary defines the same term as follows: "Any body of persons authorized to make laws or rules for the community represented by them."

Under the reserved power committed to the people of the states by the federal constitution, the people, by their state organic law, unhindered by federal check or requirement, may create any agency as its lawmaking body, or impose on such agency any checks or conditions under which a law may be enacted and become operative. Acting under this recognized authority, the Ohio constitution, prior to the adoption of the amendment of 1912, provided that the *"legislative power"* of the state should be vested in the general assembly, consisting of a senate and house of representatives. The same provision now exists, but by the adoption of the amendment of 1912 the people expressly limited this legislative power by reserving to themselves the power to reject any law by means of a popular referendum. The lawmaking body, the legislature, as defined by lexicographers, comprehends every agency required for the creation of effective laws. It cannot be claimed that the term "legislature" necessarily implies a bi-

cameral body. When the term was originally embraced in the constitution the legislatures of Pennsylvania, Georgia and Vermont consisted of but a single house, with a second body in each, called an executive council. These states later abolished their councils and established a legislature consisting of two branches, and such is the character generally of the various state legislatures to-day. 1 Bryce's American Commonwealth, page 461, note.

The constitutional provision relating to the election of congressmen, conferring the power therein defined upon the various state legislatures, should be construed as conferring it upon such bodies as may from time to time assume to exercise legislative power, whether that power is lodged in a single or two-chambered body, or whether the functions of the latter be curbed by a popular vote or its enactments approved by a referendum vote. This view was sustained in *State, ex rel. Schrader, v. Polley,* 26 S. Dak., 5, a case similar to this. The case of *McPherson* v. *Blacker,* 146 U. S., 1, is relied on by the relator as sustaining his contention. That case simply decides that under clause 2, Section 1 of Article II of the United States Constitution, state legislatures had exclusive and plenary power to direct the manner in which electors of president and vice president should be appointed, and that the legislature might appoint the same directly or provide for their appointment by popular vote. The court did not undertake to define the term "legislature," or to deny that the authority granted to the legislature as a representative body might not likewise be exercised by any

agency invested by the people with legislative power. In disposing of the case Mr. Chief Justice Fuller said, at page 25: "The legislative power is the supreme authority except as limited by the constitution of the state, and the sovereignty of the people is exercised through their representatives in the legislature *unless by the fundamental law power is elsewhere reposed.*"

However, there is another valid reason why the writ should be denied in this case. While Article I, Section 4, of the United States Constitution, commits to state legislatures the right to prescribe the times, places and manner of holding elections, that article expressly reserves to the congress full and complete control of that subject. If there be any conflict between the legislative and congressional provisions upon that subject the latter control and the law of congress supersedes any law or regulation upon the subject made by the state legislature. The concluding sentence of the article is as follows: *"But the congress may at any time by law make or alter such regulation."*

Recurring now to the provisions of the act of congress of August 8, 1911, Chapter 5, Section 4, it was stipulated that the representatives to congress should be elected by the districts "now prescribed by law until such state shall be redistricted *in the manner provided by the laws thereof* and in accordance with the rules enumerated in section three of this act." Under the constitutional provision that congress might at any time by law *make or alter* regulations prescribed by the state legislature, it had full power to direct, as it did,

that congressmen should be elected by the districts prescribed by the laws of the various states.

The congress could, under its supervisory control granted by Article I, Section 4, of the United States Constitution, require that a legislature must act with an eye to the referendum. It could require legislative action in accordance with local state constitutions. This congress did, in its apportionment law of August 8, 1911, when it recognized as lawful newly created districts after the state had been "redistricted in the manner provided by the laws thereof."

Section 4 of the original act as introduced in congress contained, after the word "redistricted," the following language: "By the legislature thereof in the manner herein prescribed." When the bill came before the senate of the United States, Mr. Burton, senator from Ohio, offered an amendment, which was passed, striking out that language and inserting in lieu thereof the words found in the present act, to-wit: "In the manner provided by the laws thereof and in accordance with the rules enumerated in Section three of this act." This action was taken by the senate advisedly and for the purpose of meeting such a situation as we have in Ohio, where the initiative and referendum is employed under state constitutions.

In the report of the 62d Congress, found in Volume 47, Congressional Record, Part 4, pages 3436-7, and in support of the amendment referred to, Senator Burton said:

"A due respect to the rights, to the established methods, and to the laws of the respective States

requires us to allow them to establish congressional districts in whatever way they may have provided by their constitution and by their statutes. * * * If you have a referendum in a state the object of which is to submit to the people at large the question of whether or no a statute shall stand, the question whether it is just or unjust, that provision ought especially to apply to a law dividing a state into districts, where there is such an opportunity for monstrous injustice. If there is any case in the whole list of laws where you should apply your referendum, it is to a districting bill.

"Senators on the other side, and on this side as well, have of late addressed the Senate ardently advocating the principle of the referendum and the initiative. I shall be interested to know whether they will permit the restriction, 'by the legislature thereof,' to remain in this statute. * * *

"So I have suggested that the Senate strike out the words 'by the legislature thereof in the manner herein prescribed,' and insert in lieu thereof, first, the words 'in the manner provided by the laws thereof.' This gives to each State full authority to employ in the creation of congressional districts its own laws and regulations. What objection can be made to a provision of that kind? Pass this amendment, and you will transmit to each State the message 'Proceed and district your State in accordance with your laws.' This act does not do that. It sends the message, 'Do it in only one specified way; that is, by your legislature.' "

The fact is, and it was conceded in the discussion, that the earlier apportionment acts passed by congress, following the decennial censuses of 1880, 1890 and 1900, employed the language of the bill, "by the legislature thereof."

In the controversy over the amendment the storm raged over the single question whether there was any necessity for the Burton amendment; that the language of the bill would vouchsafe a referendum of an act of the legislature without employing the language proposed in the amendment.

On page 3508 of the record the senator from Ohio said:

"In several states * * * the referendum has been adopted. It was very natural in 1890, and even in 1900, that a provision should be incorporated that the State should be redistricted 'by the legislature thereof,' because that was the only law-making power; but since then a new method of making laws has been devised, and we cannot afford to cling either to obsolete phraseology or, in our dealing with the States, to adhere to obsolete methods — that is, to ignore their methods of enacting laws.

"Mr. Shively: Mr. President, it is not a matter of adhering to obsolete methods or dealing with obsolete phraseology. I am entirely willing that a State shall determine what shall be the rule of apportionment within that State, but I still insist that the language of this bill does not prohibit the legislature from arranging the districts by referendum of the act to the people."

In view of what we have said as to the construction to be given to the term "legislature" in the constitutional provision referred to, it would seem that the amendment offered by Senator Burton was not necessary to accomplish the result sought. However that may be, it is self-evident that congress took the subject out of the realm of doubt by providing that the redistricting should be made in the manner provided by the state laws, and furthermore that the language of the act was specifically changed to conform to the constitutions of those states where the referendum is employed. Congress had full power, under the provision of Section 4 of Article I of the United States Constitution, that "the congress may at any time by law make or alter such regulations," to pass an act of this character.

The act of congress is paramount and supersedes any and all laws or regulations made by the state legislature upon that subject. This is implied in the power to "make or alter." *Ex parte Siebold,* 100 U. S., 371, 383.

We therefore hold that the act of April 28, 1913, passed by the general assembly of Ohio, was valid and that the act of May 27, 1915, thereafter passed by the general assembly and failing of approval by popular vote under the referendum, was invalid and void.

On behalf of the defendants the attorney general contends that the questions involved in this case are not justiciable; that they are political rather than judicial.

In support of this contention many cases have been cited.　Section 5 of Article I of the Federal Constitution provides that "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members　*　*　*."　Did the case presented involve questions which affect the wisdom or policy of legislation, this court could, of course, not intervene.　Thus, in cases where the legislative discretion in the creation of congressional districts was sought to be reviewed, the question would be purely political and not judicial. In such cases the furthest that the courts have gone is to interfere only where there has been such a gross abuse of legislative discretion as to be palpably an evasion of the law or constitution. The record in this case discloses that the defendants, as ministerial officers of the state, are refusing to proceed under an act of the general assembly which they claim to be an invalid law. The power of determining whether a law or constitutional provision is valid or otherwise is lodged solely in the judicial department.　The construction of the laws and constitution is for the courts, and it is generally held in such cases, although they may indirectly involve the election of political officers, that where the validity of such election depends upon the construction of a law or constitutional provision under which such election is held, then the question is justiciable and not political.　This rule has been applied in cases involving apportionment of congressional and other districts in the following cases: *State* v. *South Kingstown,* 18 R. I., 258; *State, ex rel. Morris,*

v. *Wrightson*, 56 N. J. Law, 126, 187; *Denney, Clerk, et al.* v. *State, ex rel. Basler*, 144 Ind., 503; *Harmison* v. *Ballot Commrs.*, 45 W. Va., 179; *State, ex rel. Lamb*, v. *Cunningham, Secy. of State*, 83 Wis., 90, 135; *People, ex rel. Woodyat*, v. *Thompson*, 155 Ill., 451; *Giddings* v. *Blacker, Secy. of State*, 93 Mich., 1, and *McPherson* v. *Blacker, Secy. of State*, 92 Mich., 377.

The last-named case was taken on error to the supreme court of the United States and reported in 146 U. S., 1. It was urged in that case that the subject-matter of the controversy was not of judicial cognizance, for the reason that all the questions connected with the election of a presidential elector were political in their nature and that any decision the court might make would be subject to review by political officers or agencies, such as a state board of canvassers or the congress. Mr. Chief Justice Fuller, on page 24, touching that question, said:

"The question of the validity of this act, as presented to us by this record, is a judicial question, and we cannot decline the exercise of our jurisdiction upon the inadmissible suggestion that action might be taken by political agencies in disregard of the judgment of the highest tribunal of the State as revised by our own."

Therefore, whether the secretary of state and his deputies in their ministerial capacity shall act under the legislative act of April 28, 1913, or under the later act of May 27, 1915, and the determination as to which of said acts is valid, is a judicial question and not a political one, and this

court, under the constitutional provision giving it original jurisdiction in mandamus, assumes jurisdiction.

The demurrer to the petition will be sustained, and the writ denied.

*Writ refused.*

NICHOLS, C. J., JOHNSON, DONAHUE, WANAMAKER, NEWMAN and MATTHIAS JJ., concur.