Wanamaker, J.,
concurring. The question in this case is not should our state or nation be “wet” or “dry.” The question is not are you for or against the referendum in the making of state or national constitutions. .The question is not are you for or against any particular amendment to the national constitution, proposed or prospective. The question is, Can the referendum be used by the people of Ohio on any proposed amendment to the national constitution when proposed by congress and submitted to .the states for ratification by “the legislatures” thereof?
Is such a use of the Ohio" referendum permitted, not by the constitution of Ohk> merely, for this is conceded, but by the constitution of the nation, particularly Article V?
*391 A judge who would permit his personal preference on the merits of any particular amendment to influence his judgment in deliberation upon and decision of such a question, by so much as a pennyweight, not only disqualifies himself as a judge, but brings dishonor upon the judiciary.
I am for this judgment because the primary and paramount principle involved in it was unanimously approved by this court in 1916 by the judgment in the case of State, ex rel. Davis, v. Hildebrant, Secy. of State, et al., 94 Ohio St., 154. This case was reviewed and unanimously approved by the United States supreme court within sixty days from the date of the judgment herein, as appears in 241 U. S., 565.
Now what was the question in that case, and what was decided on that question?
The first paragraph of the syllabus of the Hildebrant case reads:
“The term 'legislature/ in Section 4, Article I of the United States Constitution, comprehends the entire legislative power of'the state; and, as so used, includes not only the two branches of the general assembly but the popular will as expressed. in the referendum provided for in Sections 1 and lc of Article II of the Ohio Constitution.”
The supreme court of the United States, in its syllabus upon the same case, uses this language:
“Under the referendum amendment of 1912 to the constitution of Ohio, the. people of that State having disapproved of the state redistricting law passed after Congress had enacted the apportionment act of 1911, and the state court having held *392 that under the referendum amendment the legislative power was reserved in the people to be expressed by referendum held, that:
“The decision of the highest court of the State, that under such amendment the legislative power of the State is now vested not only in the General Assembly but also in the people by referendum and that a law disapproved by the referendum was no law, is conclusive here.”
It was admitted in open court by counsel upon both sides of the case at bar that unless it was substantially distinguishable, essentially different in principle from the Hildebrant case, the right of referendum would likewise apply to a proposed amendment to the national constitution.
It is already apparent from the syllabi quoted that the language to be construed in the Hildebrant case was the words, “the legislature thereof,” as used in Section 4, Article I of the Constitution of the United States, which section, so far as pertinent here, reads:
“The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof”
It is conceded that this section under consideration in the Hildebrant case is not the section involved in this case, and that what is involved here is Article V of the national constitution, which so far as pertinent reads:
“The Congress * * * shall propose Amend'ments to this Constitution * * * which * * * shall be valid * * * as Part of this Constitu *393 tion, when ratified by the Legislatures of three fourths of the several States
Now, boiled down, the single question is, Did the constitution-makers intend to use the words “the legislature” differently in Article I, Section 4, than they did in Article V?
Those against' the referendum claim an essential difference in the meaning of the words “the legislature,” in Article I and Article V. Those for the referendum insist that they are used essentially the same. Let us examine the articles respectively, with a view of determining what if any attributes or characteristics they have in common.
(1) Each article is a delegation of certain national power to “States,” Article I for redistricting purposes and Article V for ratification purposes.
(2) Each article before it may become effective requires proposals, or previous action, by the national lawmaking body, congress.
(3) Each article, whether applied to redistricting or ratifying, affects national policies, the former ofttimes swinging the balance of party power from one party to the other in the national congress, thereby for a time- at least changing the nation’s policies, and the latter more permanently and potentially affecting policies.
(4) Each article recognizes the power involved as a lawmaking power having its origin in the national lawmaking body and its consummation in the state lawmaking body.
Surely it will not be contended that the people of Ohio have failed to so declare and define their *394 legislature in its powers touching the subject of lawmaking, either statutory or constitutional, -as to be comprehensive enough to include a referendum on any proposed constitutional amendment.
The significant resemblances pointed out in the four foregoing items clearly and convincingly demonstrate that the national constitution contemplated the words “the legislature” as meaning the same thing in Article V as in Article I. The only difference maintainable touching the meaning of the words “the legislature” resides in the fact that they appear in different articles. In all substantial and essential respects the purpose, the power, the agency and the achievement are the same. Too many legal distinctions, so-called, exist in a persistent purpose to bring about a much-desired decision rather than in any inherent differences of fundamental fact or primary principle.
It is urged that this construction of the words “the legislature,” in reference to the states, destroys or devitalizes uniformity in ratification. But uniformity as to method of state government was neither designed nor desirable in the opinion of the fathers, but upon the contrary each state was presumed to deal with its own domestic affairs, that is, state affairs, in the manner best calculated to promote the safety and happiness of the people of that state, according to the judgment of the people of that state. In short, diversity of machinery for state government was then, as now, the prevailing rule, and the only uniformity contemplated by these amendments was that the lawmaking power, by whatever name known in the *395 state, by whatever agency-exercised in the state, should be the ratifying power in this case, as it was'the redistricting power in the Hildebrant case.
It was further contended that a judgment in favor of the referendum in this case would elevate the state above the nation.
It must be remembered that we had state constitutions before we had a national constitution, and that only by acting as states, through representatives and delegates, was the national constitution adopted, first by the convention and second by the states, and then it would not have been adopted by the states but for the overwhelming assurance that as soon as congress would meet there should be proposed and adopted, at the earliest practicable moment, a Bill of Rights safeguarding the rights of the states and the people.
In this behalf it is significant to note Articles IX and X:
Article IX. “The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.”
Article X. “The powers not delegated to the United- States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.”
It must be remembered that in the early history of the nation, especially at the time of the making of the national constitution, the doctrine of state’s rights was in the ascendancy, that is, the states were exceedingly jealous of their rights and powers as states and were loath to surrender them, and therefore the imperative demand for the reser *396 vation of all powers not delegated by the constitution. Surely, one of the most important and significant of all those powers reserved was the right of each state to determine for itself its own political machinery and its own domestic policies, and it can scarcely be claimed that it is within the power of any court to nullify or in any wise alter the political machinery of a state, especially that which the state has designed and designated as its lawmaking machinery.
It is also contended that at the time the national constitution was made the referendum could not possibly have been contemplated, for it was then as unknown as the automobile and the airplane.
Undoubtedly this contention is true, but what of it ? It- was sufficient for the national constitution to designate that the states must ratify and that they must ratify by legislatures or conventions, in this case legislatures; and that each state has the sole and paramount right to determine what its legislature shall be cannot now be disputed.
It is matter of common knowledge that there is too much petty continuous disturbance of state laws by the various general assemblies of the several states. Too many laws are enacted, amended and repealed, without rhyme or reason, and the people of the state in large numbers regret whenever they have a legislature upon their hands. Suppose someone were to propose and the people were to pass an amendment to the state constitution providing for the abolition of the general assembly for a period of ten years, during which *397 time all laws should be proposed and enacted by the people of the state through the initiative and referendum. If the contentions of those who are against the referendum were to prevail, during such period the state would be powerless to either favor or reject a proposed amendment to the national constitution, because it had no general assembly. Such an absurd situation disqualifying a state from passing upon proposed amendments to the national constitution surely was never contemplated.
When the national constitution was adopted at least three of the several states had what was known as an “executive council.” Though this was rather an administrative or executive name, in function the body was legislative; that is, it was the law-making power of the state. The Constitution cif Ohio nowhere uses the word “legislature,” and if the strict letter of the law be applied Ohio has no legislature in the strict and technical sense. Its legislature is .a “general assembly” plus the referendum in the hands of the people. The consti-tutional fathers were wise in delegating this power to the states and designating the legislatures- of those states as the ratifying power. They could have as readily designated the governors, or the highest court in the state. But there was fitness in recognizing the governmental function exercised as a law-making function, and that therefore the most appropriate body to make the laws for' the nation, by way- of constitutional amendment, was the same body that made the laws for the state. This they said and this they meant.
*398 There is but one way, in my judgment, in view of Articles I and V of the national constitution, in view of the decision in the Hildebrant case, supra, to sustain a judgment against the referendum in the case at bar, and that is by reversing the Hildebrant case and holding that the constitutional amendment of Ohio of 1912, on the referendum in law-making generally, and the amendment of 1918, on the ratification of amendments to the national constitution, are both in clear conflict with Article V of the national constitution.
The United States supreme court has repeatedly held that before a state or national law may be held unconstitutional the conflict must be clear to a degree known as beyond a reasonable doubt; and if any doubt exists that doubt must be resolved in favor of the state.
The Ohio Constitution, as amended in 1912 and 1918, is reasonably reconcilable with Article V, as it is with Article I.
The judgment is supported by both reason and authority.