DECHER v. SECRETARY OF STATE.

1. WORDS AND PHRASES—"LEGISLATURE"—"LEGISLATIVE POWER"—DEFINITION.

The term "legislature" is defined as "That body of men which makes the laws for a State or nation;" and "legislative power" as "authority exercised by that department of government which is charged with the enactment of law as distinguished from the executive and judicial functions. The law-making power of a sovereign State."

2. CONSTITUTIONAL LAW—LEGISLATIVE POWER.

Under section 1, Art. 5, Constitution of Michigan, the legislative power of the State of Michigan is vested in a senate and house of representatives.

3. SAME— AMENDMENTS — RATIFICATION — LEGISLATURE — INTENT —LAW-MAKING BODY—REFERENDUM.

As employed in Art. 5 of the United States Constitution,

referring to the ratification of an amendment thereto, the word "legislature" was intended by its framers to mean the representatives of the people elected to make the laws of the several States, when acting as a body; and a State has no power, through its Constitution or by statute, to restrict this action of the legislature by subjecting it to a review by popular vote.

4. WORDS AND PHRASES—"ACT"—DEFINITION.
   As pertaining to legislation, an "act" is defined as "A statute or law made by a legislative body."

5. CONSTITUTIONAL LAW—INITIATIVE—REFERENDUM.
   While, under section 1, Art. 5, Constitution of Michigan, the people using the initiative have 'the power to propose legislative measures, resolutions, and laws," the power under the referendum is limited "to approve or reject at the polls any act passed by the legislature, except," etc.

6. SAME—RATIFYING AMENDMENT NOT AN "ACT"—REFERENDUM.
   The action of the State legislature in ratifying an amendment to the Federal Constitution is not an "act" within the meaning of section 1, Art. 5, Constitution of Michigan, reserving to the people the right "to approve or reject at the polls any act passed by the legislature, except," etc.

Mandamus by Arthur Decher and others to compel Coleman C. Vaughan, secretary of State, to submit a joint resolution to a referendum. Submitted January 13, 1920. (Calendar No. 28,949.) Writ denied April 10, 1920.

*Campbell, Bulkley & Ledyard* (*Henry Ledyard*, of counsel), for plaintiffs.

*Alex. J. Groesbeck*, Attorney General, *A. B. Dougherty*, Deputy Attorney General, *Clare Retan* and *S. F. Master*, Assistants Attorney General, for defendant.

*Walter S. Foster, amicus curiae.*

SHARPE, J. At the regular session of the legislature of the State of Michigan in 1919, a resolution,

ratifying a proposed amendment to the Constitution of the United States providing for national prohibition, was adopted. A petition in proper form, asking that such resolution be submitted to the electors for adoption or rejection under the referendum provision in our State Constitution, was presented to the defendant, who, on the advice of the attorney general, declined to act upon the same, and mandamus is sought to compel him to do so. In his return to the order to show cause granted by this court, the defendant admits the facts stated in the petition to be true, but denies the right of the plaintiffs to relief for the following reasons:

"1. That the congress of the United States, pursuant to the provisions of article 5 of the Constitution of the United States proposed said amendment and directed that the same be submitted to the legislatures of the several States for ratification.

"2. That the action of the legislature of the State of Michigan ratifying said amendment in accordance with the direction of the congress of the United States is final and not subject to referendum."

Article 5, § 1, of our State Constitution reads as follows:

"The legislative power of the State of Michigan is vested in a senate and house of representatives; but the people reserve to themselves the power to propose legislative measures, resolutions and laws; to enact or reject the same at the polls independently of the legislature; and to approve or reject at the polls any act passed by the legislature, except acts making appropriations for State institutions and to meet deficiencies in State funds. The first power reserved by the people is the initiative. *   *   *

"The second power reserved to the people is the referendum." *   *   *

The prohibition amendment was proposed and submitted by the national congress under the provisions

of article 5 of the Constitution of the United States, which reads as follows:

"The congress, whenever two-thirds of both houses shall deem it necessary, shall propose amendments to this Constitution, or, on the application of the legislatures of two-thirds of the several States, shall call a convention for proposing amendments, which, in either case, shall be valid to all intents and purposes, as part of this Constitution, when ratified by the legislatures of three-fourths of the several States, or by conventions in three-fourths thereof, as the one or the other mode of ratification may be proposed by the congress: Provided that no amendment which may be made prior to the year one thousand eight hundred and eight shall in any manner affect the first and fourth clauses in the ninth section of the first article; and that no State, without its consent, shall be deprived of its equal suffrage in the senate."

The questions presented are:

(1) Does the word "legislature" in the provision of the Federal Constitution and in the joint resolution of congress mean "the legislative assembly" or "the legislative authority of the State"?

(2) Does the word "act" in the referendum provision of the State Constitution include the action of the legislature in adopting such a joint resolution?

Official notice of the ratification by the requisite number of States has been received by the secretary of State, and the amendment is now treated by that and the other departments of the national Government as a part of the Constitution. The congress has so recognized by the passage of a law (the Volstead act, approved October 28, 1919 [41 U. S. Stat. p. 305, Chap. 83]), for its enforcement.

1. It is elemental that the people of any one State cannot, by any provision in its Constitution or laws, amend the Federal Constitution. It was adopted as the supreme law of the republic by the people of all the States, and can be changed only in the manner pro-

vided therein. It follows, therefore, that we must look to it alone in determining how such amendment shall be proposed, ratified and adopted. If the language providing therefor is plain and unambiguous, and had a well-defined meaning at the time of its adoption, no one State can give it an interpretation to suit the desire of its people. As was said by Chief Justice Marshall in *Cohens* v. *State of Virginia*, 6 Wheat. (U. S.) 264, 389:

"The people made the Constitution, and the people can unmake it. It is the creature of their own will, and lives only by their will. But this supreme and irresistible power to make or to unmake, resides only in the whole body of the people; not in any sub-division of them. The attempt of any of the parts to exercise it is usurpation, and ought to be repelled by those to whom the people have delegated their power of repelling it."

Justice Story has also said:

"Where its words are plain, clear and determinate, they require no interpretation; and it should, therefore, be admitted, if at all, with great caution, and only from necessity, either to escape some absurd consequence, or to guard against some fatal evil." 1 Story on Constitution (5th Ed.), § 405.

In an early case in this court (*Bay City* v. *State Treasurer*, 23 Mich. 499), Mr. Justice COOLEY, at page 506, said:

"Constitutions do not change with the varying tides of public opinion and desire; the will of the people therein recorded is the same inflexible law until changed by their own deliberative action *  *  * They (the courts) must construe them as the people did in their adoption, if the means of arriving at that construction are within their power."

The purpose of the Constitution was to establish a representative form of government, not a pure democracy in which all power is exercised by the peo-

ple acting as a whole. While it provides for a popular branch of the legislative department, to be elected at short intervals by the vote of those entitled to the elective franchise in the several States, it is suggestive that neither the president, vice-president, nor United States senators are to be so elected. It is also significant that when there was a popular demand that senators should be elected it was not deemed sufficient to provide in the State Constitutions for a referendum in making the selection, although the Constitution provided that they "should be chosen by the legislature," but an amendment to the Federal Constitution, the 17th, was adopted therefor.

The term "legislature" is thus defined:

"That body of men which makes the laws for a State or Nation." Bouvier's Law Dictionary (Rawle's Ed.), p. 1927,

and "legislative power" as—

"Authority exercised by that department of government which is charged with the enactment of laws as distinguished from the executive and judicial functions. The law-making power of a sovereign State." Id. p. 1915.

Counsel for the plaintiffs insist that under our State Constitution—

"The power to legislate is vested in both the constituent assembly and the electors themselves."

—that in writing article 5 of the Federal Constitution its framers intended to submit an amendment to such legislative power for ratification, and not merely to the legislative body known as the legislature.

We cannot but think that such an interpretation does violence to the plain meaning of the word legislature as understood at the time the Federal Constitution was adopted. There were then law-making bodies, always referred to as "legislatures," in all of

the colonies which under the Constitution afterwards became States. This term is frequently used in the Constitution, and an examination will reveal the fact that in most cases it could not be applied other than to such assemblies.

It is suggested that the intent of the Constitution is simply "to call the roll of States and get an expression from each State as to its will and desire." In what way shall such expression be voiced? The Constitution says by the "legislatures." In making response, the members act collectively and when a majority of those constituting such bodies respond in the affirmative, and such action is certified to the Federal authorities by a sufficient number of States, the amendment is adopted and is thereafter a part of the Constitution.

The action of the legislature in ratifying an amendment is not, strictly speaking, a legislative act. It is but one of several steps required to be taken to change the Federal Constitution. The congress, or the States by petition, must first propose an amendment. In order that it may become operative, it must receive the assent of the States by ratification in the manner provided in article 5. How shall such assent be expressed? By the adoption by the State legislature of a joint resolution ratifying the amendment. The State thus participates in the making of a new law simply by expressing its assent thereto in the manner provided. It has not thereby enacted a law any more than the President or governor does so by approving bills passed by the congress or legislature.

The language of article 5 of our State Constitution negatives the claim of plaintiffs. It provides:

"The legislative power of the State of Michigan is vested in a senate and house of representatives."

This is followed by the provisions relating to the referendum wherein the right "to approve or reject at the polls any act passed by the legislature" is re-

served to the people. The framers of this instrument thus clearly distinguish between the legislative power vested in the legislature and the legislature itself. The former embraces the right to enact legislation, the latter the body in whom such right is primarily vested. Under the provisions which follow as to initiative and referendum, the people have no power to enact legislation until the proposal therefor has been submitted by petition to the legislature for action thereon. The right of the people to thus legislate in no way makes them a part of the legislature or changes the well-recognized meaning of that term.

Reliance is placed by counsel for plaintiffs on the decision in *Davis* v. *Hildebrant*, 94 Ohio St. 154 (114 N. E. 55), affirmed by the Supreme Court of the United States as *Davis* v. *Ohio*, 241 U. S. 565 (36 Sup. Ct. Rep. 708), in which the referendum provision of the Ohio constitution was held to apply to an act of the legislature redistricting the State for congressional purposes. The provision in the Federal Constitution relating thereto reads:

"The times, places and manner of holding elections for senators and representatives, shall be prescribed in each State by the legislature thereof; but the congress may at any time by law make or alter such regulations, except as to the places of choosing senators." Article 1, § 4.

In pursuance of the authority therein conferred, congress in 1842 provided for the election of representatives by districts, and in 1891 provided that the existing districts should continue in force "until the legislature of such State, in the manner herein prescribed, shall redistrict such State." An amendment in 1911 provided that the redistricting should be made by a State "in the manner provided by the laws thereof." In discussing these provisions, Mr. Chief Justice White said:

"The legislative history of this last act leaves no room for doubt that the prior words were stricken out and the new words ('in the manner provided by the laws thereof') inserted for the express purpose, in so far as congress had power to do it, of excluding the possibility of making the contention as to referendum which is now urged."

The laws of the State include the Constitution as well as the statutes, and, when congress provided that the redistricting should be made "in the manner provided by the laws" of the States, the provision in the State Constitution for a referendum on the action of the legislature could not but apply. We do not think this decision places any interpretation upon the word "legislature" as used in this constitutional provision. It simply holds that, as congress was given the power to regulate the action of the States in redistricting, it might confer upon the States the right to provide therefor "in the manner provided by the laws" of each State and that the law of Ohio included the referendum provision of its Constitution.

The case of *McPherson* v. *Blacker*, 146 U. S. 1 (13 Sup. Ct. Rep. 3), an appeal from this court, 92 Mich. 377 (16 L. R. A. 475), involving the power of the State legislature to provide for the selection of presidential electors by districts under article 2 of the Federal Constitution, is instructive. The question here presented was not directly considered, but the power of the legislature under that article was discussed at length. In the opinion, Mr. Chief Justice Fuller quotes approvingly the language employed by Senator Morton, chairman of the committee on privileges and elections, in a report presented by him to the senate relating to the power of the legislature to provide for the selection of such electors, in which it is said:

"This power is conferred upon the legislatures of the States by the Constitution of the United States, and cannot be taken from them or modified by their

State Constitutions any more than can their power to elect senators of the United States. Whatever provisions may be made by statute, or by the State Constitution, to choose electors by the people, there is no doubt of the right of the legislature to resume the power at any time; for it can neither be taken away nor abdicated." Senate Rep. 1st Sess. 43 Cong. No. 395.

In 2 Watson on the Constitution, page 1310, the writer says:

"Whether an amendment is proposed by congress, or by a convention, it is ratified or rejected by the representatives of the people either in the legislatures or in conventions and not by the people voting on it directly. The people have no direct power either to propose an amendment to the Constitution, or to ratify it after it is proposed and submitted."

Several of the State courts of last resort have had occasion to pass on this question. In *State* v. *Howell*, 107 Wash. 167 (181 Pac. 920), the supreme court of Washington, by a divided court, held that the resolution of ratification was subject to the referendum provisions of the State Constitution. In *Hawke* v. *Smith* (Ohio), 126 N. E. 400, there was a similar holding, one of the justices dissenting therefrom. On the other hand, the supreme court of Maine in *Re Opinion of the Justices* (Me.), 107 Atl. 673, decided otherwise. It was therein said:

"Here, again, the State legislature in ratifying the amendment, as congress in proposing it, is not, strictly speaking, acting in the discharge of legislative duties and functions as a law-making body, but is acting in behalf of and as representative of the people as a ratifying body, under the power expressly conferred upon it by article 5. The people, through their Constitution, might have clothed the senate alone, or the house alone, or the governor's council, or the governor, with the power of ratification, or might have reserved that power to themselves to be exercised by popular vote."

The same view was taken in *Herbring* v. *Brown* 92 Or. 176 (180 Pac. 328). Our attention is also called to the decision of the district court of Lancaster county, Nebraska, supporting plaintiffs' contention, and that of the United States district court for the northern district of California, in which the opinion of the Maine judges is quoted approvingly and followed.

The people in any State may, in their Constitution, reserve to themselves the right to initiate and defeat State legislation by their vote. To the extent and in the manner therein provided they, acting in conjunction with the legislature, constitute the law-making power of the State. Each State, however, can participate in amending the Federal Constitution only in the manner provided therein. If the people want to secure the right to ratify amendments by popular vote thereon, they may do so by an amendment which shall so provide, but such power rests only in the people themselves and should not be usurped by the courts through a judicial interpretation of the instrument itself.

It is our conclusion that the word "legislature," as employed in article 5 of the Federal Constitution, was intended by its framers to mean the representatives of the people, elected to make the laws of the several States, when acting as a body, and that a State has no power through its Constitution or by statute to restrict this action of the legislature by subjecting it to a review by popular vote.

2. Under the referendum provision of our State Constitution, the people reserve to themselves the right "to approve or reject at the polls any act passed by the legislature, except acts making appropriations for State institutions and to meet deficiencies in State funds." Is the ratifying resolution an "act" within the meaning of this provision?

The construction to be placed on it should not be

technical. This court should give effect to the purposes indicated by a fair interpretation of the language used. At the same time, we must bear in mind that it is to be presumed that the framers of the Constitution employed words in their natural sense. The word "act," when employed in legislation, has had a well-defined meaning since our first Constitution was adopted. When a proposed law is introduced in the legislature, it is called a "bill." When the bill is passed and approved and becomes a law, it is called an "act." The clause by which it is given life and effect uniformly reads: *"The People of the State of Michigan enact."* As pertaining to legislation, "act" is defined by 1 Bouvier (Rawle's Ed.), page 79, as—"A statute or law made by a legislative body." These appellations, "bill" and "act," are frequently used in our State Constitution:

"Every bill shall be read three times in each house before the final passage thereof." Article 5, § 23.

"Every bill passed by the legislature shall be presented to the governor before it becomes a law." Article 5, § 36.

"No act shall take effect or be in force until the expiration of ninety days," etc. Article 5, § 21.

"No local or special act shall take effect until approved by a majority of the electors," etc. Article 5, § 30.

Section 38 reads:

"Any bill passed by the legislature and approved by the governor, except appropriation bills, may be referred by the legislature to the qualified electors; and no bill so referred shall become a law unless approved by a majority of the electors voting thereon."

Such laws are referred to in section 1 of article 5 as "Acts adopted by the people."

It thus appears that the framers of the Constitution, by the use of the word "act" in article 5, had in mind a statute or law passed with the formality re-

quired by the Constitution and approved by the governor. It is suggestive that while, under the provision of the Constitution relied on, the people using the initiative have "the power to propose legislative measures, resolutions and laws," the power under the referendum is limited "to approve or reject at the polls any act passed by the legislature, except," etc. While an amendment to the Constitution, after ratification by a sufficient number of States, becomes a part thereof and is thereafter the supreme law of the land, the action of the State legislature in ratifying it is not the making of a law or an "act" as understood in legislative parlance.

This question has been considered by the following courts: In *Moulton* v. *Scully,* 111 Me. 428 (89 Atl. 944), that court says:

"The referendum applies and was intended to apply only to acts or resolves of this class, to 'every bill or resolution having the force of law,' that is, to what is commonly known as legislative acts and resolves, which are passed by both branches, are usually signed by the governor and are embodied in the legislative acts and resolves, as printed and published."

In *Re Opinion of the Justices* (Me.), 107 Atl. 673, the same court says:

"This resolution, ratifying the proposed constitutional amendment, was neither a public act, a private act, nor a resolve having the force of law. It was in no sense legislation. It was not signed by the governor, nor could it have been vetoed by him. It was simply the ratifying act of the particular body designated by article 5 of the Federal Constitution to perform that particular act."

See, also, *Hopping* v. *City of Richmond,* 170 Cal. 605 (150 Pac. 977); *Herbring* v. *Brown,* 92 Or. 176 (180 Pac. 328); *Whittemore* v. *Terral* (Ark.), 215 S. W. 686.

To the contrary, see *State* v. *Howell, supra.* The

decision of the Ohio supreme court in *Hawke* v. *Smith,* *supra,* has no bearing on the question as the Constitution of that State expressly provides for a referendum on the action of the general assembly in ratifying any such proposed amendment.

It follows that the defendant was justified in refusing to act on the petition for a referendum, and the writ of mandamus is denied, without costs.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.