[Cite as *Austintown Ambulatory Emergency Room v. Mansour*, 2011-Ohio-4559.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| AUSTINTOWN AMBULATORY EMERGENCY ROOM, et al., | ) ) ) | CASE NO.   10 MA 152 |
| PLAINTIFFS-APPELLEES, | ) ) | |
| - VS - | ) ) | O P I N I O N |
| WALEED MANSOUR, M.D., | ) ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas Court,
                                 Case No. 05CV466.


JUDGMENT:                        Affirmed.


APPEARANCES:
For Plaintiff-Appellee:          Attorney Stuart Strasfeld
                                 100 Federal Plaza East, Suite 600
                                 Youngstown, Ohio  44503



For Defendant-Appellant:         Attorney Robert Rohrbaugh
                                 4800 Market Street, Suite A
                                 Youngstown, Ohio  44512



JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: September 8, 2011

VUKOVICH, J.

¶{1}   Defendant-appellant Waleed Mansour, M.D., appeals the decision of the Mahoning County Common Pleas Court granting judgment to plaintiff-appellee Austintown Ambulatory Emergency Room, et al.   Appellant argues that the court abused its discretion in denying his request for a continuance of the trial.   Appellant also argues that the damage award was not supported by the evidence at trial.   For the following reasons, the judgment of the trial court is affirmed.

                                    STATEMENT OF THE CASE

¶{2}   Appellant was a full-time independent contractor medical director of the hospital's emergency room for two years ending in July of 2003.   After the business manager left, appellant began requesting and receiving payment for holiday, sick, and vacation time, which he was not entitled to as an independent contractor.   Soon thereafter, appellant began using the hospital facilities to provide medical examinations for the Bureau of Worker's Compensation without hospital authorization. (Tr. 278-279).   (He had been performing these services out of other physician's offices before, and he used the hospital insurance policy in order to be placed on the BWC's list of providers).   He and various companies he formed received payment from the BWC for services rendered from the hospital during hours appellant was being paid to work as the medical director.

¶{3}   In 2005, the hospital filed suit against appellant for breach of contract, unjust enrichment, fraud, and breach of fiduciary duty.   A jury trial was scheduled to proceed on December 9, 2009.   Appellant informally sought a continuance of this trial date without filing a motion or making an oral motion on the record.   In a December 3, 2009 judgment entry, the court denied appellant's request.

¶{4}   On the day of trial, appellant authorized his attorney to stipulate to liability, agreeing that he and his corporations were jointly and severally liable for breach of an oral contract, unjust enrichment, civil fraud, and breach of fiduciary duty. The issue of damages was tried to the court thereafter.   In a June 14, 2010 judgment

entry, the court awarded the hospital $8,550 for the benefit payments to which appellant was not entitled, $32,000 for unjust enrichment and/or civil fraud, and $10,000 for punitive damages. The within appeal followed.

ASSIGNMENT OF ERROR NUMBER ONE

¶{5} Appellant's first assignment of error provides:

¶{6} "THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO SUSTAIN APPELLANT'S MOTION TO CONTINUE TRIAL."

¶{7} The case was continued various times over the years due to ongoing settlement negotiations. A May 2008 trial date was reset due to appellant's involvement in his divorce proceedings. Appellant then terminated his attorneys in June of 2008. An October 2008 trial date was continued due to appellant having only recently retained new counsel. The hospital requested a continuance of the June 2009 trial date. Appellant sought a continuance of the August 2009 trial date. The case was then reset for December 9, 2009.

¶{8} On December 3, 2009, the court filed an entry denying appellant's request for a continuance. However, there is no motion for continuance filed of record. Appellant states that the motion was faxed to the visiting judge rather than being filed with the clerk. Appellant also states that he attached a letter from a physician to the motion, stating that he was "potentially infectious" with swine flu and that he should not be in contact with others.

¶{9} Appellant contends that he was forced to stipulate to liability as a result of the denial of his request for a continuance. He states that he had to enter stipulations that day or the entire trial would have proceeded without his presence but that by stipulating only to liability, he was able to attend and testify at the later damage hearing to contest the existence of damages.

¶{10} The hospital argues that, by failing to actually file a motion of record, appellant waived any right to challenge the ruling on the motion. The hospital also argues that the trial court had wide discretion to deny the continuance and that appellant did not establish that he could not attend the December 9 trial and did not estimate when he would be able to attend trial.

¶{11} As we do not have the motion and the letter allegedly attached to it, we cannot evaluate the propriety of denying such continuance. There is no evidence in the record of what information the court had before it when it ruled. All we have are appellant's brief appellate statements as to what he remembers the motion stating. There has been no attempt to correct the record below in order to provide this motion and letter to this court, if they even still exist. There is also no indication that the hospital was provided with notice of this unfiled motion.

¶{12} It is notable that, contrary to appellant's brief, which states that the continuance was sought the day before trial, the continuance in fact had to have been sought at least six days prior to the December 9 trial date because the court denied the request in a December 3 entry. This is noteworthy because the court may have concluded that there was no indication that appellant would still be unable to attend trial a week after the request. If he were still ill the morning of trial, he could have renewed his request for a continuance at that time, this time by filing it with the clerk.

¶{13} In any event, the court has broad discretion in denying a continuance. *State v. Unger* (1981), 67 Ohio St.2d 65, 67. Thus, an appellate court will not reverse a trial court's denial of a continuance absent an abuse of discretion. Id. An abuse of discretion is more than a mere error in judgment; it signifies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. There is no mechanical test for balancing any potential prejudice to a defendant against the trial court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice, but some of the factors to consider include: the length of delay requested; other continuances; the inconvenience to all involved; whether the delay is for a legitimate reason or appears to be a delaying tactic; whether the party requesting the continuance contributed to the circumstance giving rise to the request; and any other relevant factors depending on the unique circumstances of each case. *Unger*, 67 Ohio St.2d at 67-68.

¶{14} This case had been pending for many years. Continuances were continually granted due to settlement discussions. Appellant had the case continued in the past for other reasons as well. He also caused a delay by terminating his

attorney. As the motion for a continuance was not filed with the clerk, the length of the delay requested is unknown and the particulars of his illness are unknown. That is, we remain unaware of how severe his symptoms were (i.e. would they prohibit him from testifying) and how long the symptoms were expected to last. Moreover, as the hospital points out, appellant's brief states that the physician's letter merely stated that he was "potentially" infectious. Lastly, all colds and flus are contagious, but trials do not automatically get continued because a defendant has a potentially contagious condition. Under the circumstances existing in this case, the trial court did not abuse its discretion in denying appellant's unfiled request for a continuance. This assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER TWO

¶{15} Appellant's second assignment of error argues:

¶{16} "THE VERDICT ON DAMAGES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

¶{17} First, appellant states that he thought he was entitled to sick, vacation, and holiday time. However, appellant stipulated to his liability on this issue.[1] Thus, the case proceeded with the admission that he was not entitled to the amounts submitted on his timesheets and received by him. The question for the trial court on this topic was merely the amount that he received. That he received $8,550 in these types of benefits was not disputed below and was supported by testimony and evidence, including appellant's own testimony and his timesheets. (Tr. 79-83). As such, appellant's vague arguments regarding this portion of the damage award are without merit.

¶{18} Appellant then mentions that he thought he was permitted to use the facilities for his personal benefit. An argument based on this contention cannot be made here because appellant stipulated to liability regarding these claims including that he committed fraud, and only the amount of damages was before the trial court.

¶{19} Appellant then argues that the award of $32,000 for unjust enrichment and fraud was contrary to the manifest weight of the evidence. In viewing the weight

---

[1] Moreover, it was established that appellant was an independent contractor and was paid as such (with no taxes taken from his checks). In any event, a subjective belief that you are entitled to a certain payment is not a defense to having to return a payment proven to be paid in error.

of the evidence, there is a presumption in favor of the trier of fact's factual determinations because the fact-finder had an opportunity to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81. A difference of opinion on credibility of witnesses and evidence is not a valid reason for reversing on weight of the evidence. Id. at 81. If there is competent, credible evidence supporting all the elements, the appellate court must affirm. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, syllabus. The manifest weight review conducted in a civil case is much more deferential than in a criminal case. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶26.

¶{20} The hospital points out that appellant used their facilities and their personnel to perform medical examinations for the BWC. (Tr. 87-90, 112-115, 123-124). The hospital also notes that he used their malpractice insurance in order to obtain his position on the BWC panel of providers. According to the hospital's argument below, appellant received approximately $200,000 from the BWC during the same time period that he was being paid by the hospital where he was contractually obligated to spend his working time to advance the profitable interests of the hospital. The hospital asked for the total amount appellant received from the BWC during his tenure as medical director. During just the half year that he conducted examinations out of the hospital, appellant received nearly $100,000 from the BWC.

¶{21} Appellant responds that his clients would not otherwise have been at the hospital because he was the one on the BWC's list. However, the court could rationally find that as the medical director he was obliged to garner business for the hospital and that the hospital was entitled to any money generated as a result of medical business he conducted in the hospital while he was being paid his hourly rate. Obviously, if appellant was actively performing examinations for the BWC during work hours, he could not simultaneously be performing his medical director duties for which he was being paid $75 per hour. Even appellant admitted that some of the examinations occurred during the hours that he was getting paid by the hospital. (Tr. 110).

**¶{22}** A finding of unjust enrichment is supported because he billed the hospital for time for which he did not actually perform hospital duties but rather was working for the BWC (on hospital property for that matter); as he was not performing work for the hospital during many of the hours for which he was paid, the court could rationally find that the hospital was entitled to reimbursement. See *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183 (benefit conferred by a plaintiff upon a defendant; knowledge by the defendant of the benefit; and retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment). The hours he reported to the hospital were outlined as were the number of examinations he performed per week and how much he was paid for the various services he rendered to the BWC. (Tr. 70-71, 77-78).

**¶{23}** Furthermore, the damage award was alternatively for fraud as well as unjust enrichment. Considering that he made nearly $100,000 from the BWC during the time he was conducting examinations from the hospital while being paid by the hospital, the award of $32,000 does not appear to be speculative or lacking in support. An award of damages is a discretionary matter and will not be reversed absent an abuse of discretion. *Roberts v. United States Fid. & Guar. Co.* (1996), 75 Ohio St.3d 630, 634. The trial court's decision does not appear to be unreasonable, unconscionable, or arbitrary; nor is it unsupported by the evidence.

**¶{24}** Lastly, appellant states that there was no evidence of malice or egregious conduct to support a punitive damages award. (He does not contest the amount of the award, just the fact that any punitive damages were awarded).

**¶{25}** Punitive damages are not recoverable unless the defendant's acts or omissions show malice or aggravated or egregious fraud. R.C. 2315.21(C)(1). See, also, former R.C. 2315.21(C)(1) (which until 2005 also listed aggravated or egregious oppression or insult). Malice here is defined as a state of mind characterized by hatred, ill will, or a spirit of revenge or as a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 37. Actual malice can be inferred from conduct and surrounding circumstances which may be characterized as reckless, wanton, willful, or gross. Id. At the time of *Villella*, the burden was only

preponderance of the evidence. However, the plaintiff now has the burden to prove evidence that he is entitled to punitive damages by clear and convincing evidence. R.C. 2315.21(D).

¶{26} Under the hospital's version of the case, appellant took advantage of a change in management to engage in a pattern of fraudulent conduct. He filed false timesheets, which not only claimed benefits to which he was not entitled but also reported hours working for the hospital when he was not actually performing work for the hospital. Rather, he was working for his private practice. And, he was doing this from the hospital as if it were his personal facility. He used their rooms and equipment and posted a sign. He also had a hospital employee work out of the hospital for the benefit of this private practice. This employee even sent checks back which attorneys had written to the hospital when seeking medical records, and she asked them to rewrite the check out to appellant's private practice.

¶{27} In addition, he used the hospital's malpractice insurance to apply for the position with the BWC. Plus, he claimed on the stand that he later procured his own insurance prior to actually seeing any BWC clients. However, the testimony of an insurance representative for the policy he claimed he procured disputed appellant's testimony on this matter; specifically, she revealed that the policy was issued but then canceled shortly thereafter, before a premium was paid.

¶{28} The trial court need not have believed appellant's claim that since no one stopped him from January until July, he thought he was permitted to use the hospital facilities. Appellant's credibility regarding his state of mind and pattern of continual deceit were questions best left for the trier of fact. *Seasons Coal*, 10 Ohio St.3d at 80-81 (opportunity to observe demeanor, gestures, and voice inflections and to use these observations in weighing credibility); *C.E. Morris*, 54 Ohio St.2d at syllabus (if there is competent, credible evidence supporting all the elements, the appellate court must affirm).

¶{29} Under all of the facts, circumstances, and rational inferences that can be drawn therefrom, we find there existed sufficient competent, credible evidence that appellant engaged in aggravated or egregious fraud to support the decision to award punitive damages. See, e.g., *Apel v. Katz* (1998), 83 Ohio St.3d 11, 22 (punitive

damage award for interference with easement), citing as examples of more classic punitive damage scenarios *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552 (punitive damage award based on allegation of bad faith refusal to settle claim against insurer); *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638 (punitive damage award based on claim that defendant doctor in medical malpractice action altered patient records).  As such, we defer to the trial court's decision here.  See *Wilson*, 113 Ohio St.3d 382 at ¶26 (appellate court must give great deference in civil review of the weight of the evidence).  This assignment of error is overruled.

¶{30} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Waite, P.J., concurs.
DeGenaro, J., concurs.