[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, Slip Opinion No. 2022-Ohio-4677.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4677

TWISM ENTERPRISES, L.L.C., APPELLANT, *v*. STATE BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS AND SURVEYORS, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, Slip Opinion No. 2022-Ohio-4677.]

*Statutory interpretation—Judicial deference to administrative agencies—Start-up firm seeking certificate of authorization to provide engineering services satisfied R.C. 4733.16(D) by designating independent contractor as its full-time manager—R.C. 4733.16(D) does not preclude an independent contractor from serving as a full-time manager of an engineering firm— In Ohio, judicial deference to administrative agencies is permissive rather than mandatory and may occur only when a statutory term is ambiguous— Court of appeals' judgment after applying mandatory deference to agency's interpretation of statute reversed and cause remanded.*

(No. 2021-1440—Submitted July 12, 2022—Decided December 29, 2022.)

APPEAL from the Court of Appeals for Hamilton County,

Nos. C-200411, C-210125, 2021-Ohio-3665.

_____

**DEWINE, J.**

{¶ 1} This case involves a dispute about a statute that sets forth the requirements a firm must meet to provide engineering services in Ohio. Specifically, the firm must "designate one or more full-time partners, managers, members, officers, or directors" as in "responsible charge" of its engineering activities. R.C. 4733.16(D). The state agency in charge of administering the statute contends that to be a full-time manager, one must be an employee and cannot be an independent contractor. The court of appeals determined that it was required to defer to the agency's reasonable interpretation of an ambiguous statute and, on this basis, held that the statute precluded an independent contractor from fulfilling the role of full-time manager.

{¶ 2} To resolve the dispute, we must answer two questions. The predicate question is: What deference, if any, should a court give to an administrative agency's interpretation of a statute? Second, once we have sorted out the deference issue: What does the statute mean?

{¶ 3} We reaffirm today that it is the role of the judiciary, not administrative agencies, to make the ultimate determination about what the law means. Thus, the judicial branch is *never* required to defer to an agency's interpretation of the law. As we explain, an agency interpretation is simply one consideration a court *may* sometimes take into account in rendering the court's own independent judgment as to what the law is.

{¶ 4} Applying our independent judgment here, we find nothing in the statutory language to preclude an independent contractor from serving as a full-time manager of an engineering firm. We reverse the contrary judgment of the court of appeals.

## I.  BACKGROUND

**{¶ 5}** The Ohio Board of Registration for Professional Engineers and Surveyors ("the Board") oversees the engineering profession in Ohio.  This case arises from the Board's denial to TWISM Enterprises, L.L.C., of a certificate of authorization to provide engineering services.

### A.  The Board denies TWISM's application to provide engineering services

**{¶ 6}** Engineering firms that wish to do business in Ohio must receive authorization from the Board.  R.C. 4733.16(B).  The firm seeking authorization "shall designate one or more full-time partners, managers, members, officers, or directors as being responsible for and in responsible charge of the professional engineering or professional surveying activities and decisions."  R.C. 4733.16(D).  The person designated must be a state-registered engineer.  *Id.*  Once the statutory requirements are met, the Board has a mandatory duty to register the firm:  the Board "shall issue a certificate of authorization to each firm, partnership, association, limited-liability company, or corporation that satisfies the requirements of this chapter."  R.C. 4733.16(E).

**{¶ 7}** The Board has adopted an administrative rule that defines "responsible charge" as "being in control of, accountable for and in either direct or indirect supervision of the engineering and/or surveying activities of the business enterprise."  Ohio Adm.Code 4733-39-02(A).  The rule defines "full-time" as "working more than thirty hours per week or working substantially all the engineering or surveying hours for a firm, partnership, association, limited liability company or corporation that holds a certificate of authorization."  Ohio Adm.Code 4733-39-02(B).

**{¶ 8}** TWISM, a small start-up firm, applied to the Board for a certificate of authorization.  TWISM's application designated James Cooper as its manager.  Cooper attested that he is a full-time engineer "in responsible charge for and in charge of the professional engineering * * * activities and decisions of the firm."

Cooper represented that he provides engineering services to TWISM on a per-project basis and that he provides all of TWISM's engineering services. TWISM's operating agreement lists Cooper as a "manager" "vested with the management" authority "to oversee the day to day operations of the engineering department." For tax purposes, the firm reports his income to the IRS as an independent contractor on a form 1099, rather than withholding and reporting his income as an employee under a W-2 tax form.

{¶ 9} The Board denied TWISM's application. As the basis for its denial, the Board said that TWISM had "failed to designate one or more full-time partners, managers, members, officers, or directors as being responsible for and in charge of professional engineering activities and decisions for the firm." In the Board's view, a manager had to be a "W-2" employee rather than a "form-1099" independent contractor.

{¶ 10} TWISM pursued its right to an administrative appeal, which it presented to a hearing officer appointed by the Board. The hearing officer recommended that the Board again deny TWISM's application, noting that the Board's "expertise in the area" requires "deference" to its "interpretation of the laws." The Board adopted the hearing officer's findings of fact and conclusions of law and accepted his recommendation to deny the application.

{¶ 11} The Board identified two problems with TWISM's application. First, it said that Cooper did not work "full time" for TWISM. It pointed to Ohio Adm.Code 4733-39-02(B)'s definition of "full-time," which requires more than 30 hours of work weekly *or* "working substantially all the engineering or surveying hours for" the firm. The Board, though, never explained why Cooper, who indisputably performed "all the engineering * * * hours" of TWISM, failed to meet this definition.

{¶ 12} Second, the Board found that TWISM did not satisfy the requirement that it have a full time "manager," because of Cooper's status as an independent

contractor rather than a W-2 employee. The Board said that it was necessary that the holder of the certificate of authorization have control over the professional engineer's activity and "[t]hat control is ensured by an employer/employee relationship." Thus, the Board adopted a hardline rule that R.C. 4733.16(D) requires formal W-2 employment; a business may not designate an independent contractor as professional engineer.

### B. The common pleas court applies de no novo review, but the court of appeals defers to the Board's interpretation

{¶ 13} TWISM appealed the agency adjudication to the Hamilton County Court of Common Pleas. *See* R.C. 119.12(A)(1). In its arguments to the court, the Board asked for "due deference" to its "reasonable" interpretation that R.C. 4733.16(D) requires an employer-employee relationship between the business and the designated engineer. Adopting a magistrate's recommendation, the court reversed the Board's decision without affording any deference to the agency's interpretation of the statute. In doing so, the court concluded that the Board's determination that a manager "is required to be a full-time 'W-2' employee in order to satisfy the requirements of R.C. 4733.16(D)" is "not mandated by the plain text of the statute." The court also rejected the Board's conclusion that Cooper did not meet the full-time requirement. It explained that because Cooper performs "substantially all" of TWISM's engineering work, he satisfied the administrative code's definition of "full-time." The court thus ordered the Board to issue TWISM a certificate of authorization to perform engineering services.

{¶ 14} The Board appealed to the First District Court of Appeals. The court of appeals framed the question as "whether the statute and regulation permit an independent contractor to serve as a 'full-time manager' for the purposes of obtaining a [certificate of authorization]." 2021-Ohio-3665, ¶ 14. The Board asserted that the trial court should have inquired only into whether the Board's interpretation of the statute is reasonable. *Id.* at ¶ 15. As long as its interpretation

is reasonable, maintained the Board, the trial court owes it deference. *Id.*

{¶ 15} The court of appeals declined to go so far. It held that a court must defer to an administrative interpretation only if the court first has found the statute to be ambiguous. *Id.* at ¶ 16, citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). It then defined "ambiguity" broadly, holding that "a statute is ambiguous when its language is subject to more than one reasonable interpretation." *Id*. at ¶ 18.

{¶ 16} Applying this definition, the court found R.C. 4733.16(D) to be ambiguous. It reasoned that the statute "could" be read as requiring the manager to be "directly affiliated with the entity" or "could" be read as allowing the manager to be an independent contractor. *Id.* at ¶ 28. It thus concluded: "Because there are different, reasonable readings of 'full-time manager,' we find that the term is ambiguous. As such, this court must defer to the Board's interpretation." *Id*. at ¶ 29.

{¶ 17} We accepted TWISM's appeal to review (1) this court's approach to administrative deference and (2) whether TWISM's application for a certificate of authorization satisfies the requirements of R.C. 4733.16(D). *See* 165 Ohio St.3d 1540, 2022-Ohio-397, 180 N.E.3d 1170. The attorney general represents the Board in this case. Separately, the attorney general has filed an amicus brief on his own behalf. As amicus curiae, he takes no position on "which party ought to win this case" but "urges the Court, in resolving the matter, to hold that agencies' legal interpretations are not entitled to any deference."

## II. AGENCY DEFERENCE

{¶ 18} We must decide whether TWISM may designate an independent contractor as its full-time manager for purposes of R.C. 4733.16(D). Throughout this litigation, the Board has asserted that the judiciary is required to defer to the Board's interpretation of the statute. In the courts below, the deference issue has

proved dispositive: the court of common pleas reviewed the issue without deference and held that an independent contractor could serve as the firm's manager; the court of appeals held that deference was required and reached the opposite conclusion. But now the Board urges this court to avoid the deference issue and simply find that the plain language of R.C. 4733.16(D) unambiguously compels an employment relationship.

{¶ 19} For two reasons, we decline the Board's invitation to decide this case on a basis other than the legal positions advanced below and the propositions of law we have accepted. First, R.C. 4733.16(D) is silent on any employment requirement. The designated engineer must be a manager (or some similar role), but, as the court of appeals noted, firms will often "outsource management duties to independent contractors," 2021-Ohio-3665 at ¶ 26. So the Board's argument that the law unambiguously requires a W-2 employment relationship with the designated engineer is difficult to reconcile with the plain text of the provision. Second, up to this point in the litigation, the Board had relied on authority that required deference "unless the interpretation is unreasonable," *State ex rel. Clark v. Great Lakes Constr. Co.*, 99 Ohio St.3d 320, 2003-Ohio-3802, 791 N.E.2d 974, ¶ 10. That position did not depend on ambiguity, and changing positions at this advanced stage cannot cover up the deference issue lurking in this case.

{¶ 20} Thus, before we can determine whether TWISM is entitled to a certificate of authorization, we must first decide what deference, if any, should be given to the Board's interpretation of the engineering laws. We will begin by surveying this court's (admittedly muddled) precedent on deference. We will then clarify the circumstances under which a court might properly consider an agency interpretation of a statute. Once we have set forth the proper standard for agency deference, we will resolve TWISM's challenge.

**A. Ohio has deference cases but no deference doctrine**

{¶ 21} Administrative deference is a frequent topic in the federal courts.

Most practitioners are familiar with the framework established by the United States Supreme Court in *Chevron*, 467 U.S. at 865-866, 104 S.Ct. 2778, 81 L.Ed.2d 694, under which a court is required to defer to an administrative agency's reasonable interpretation of an ambiguous statute.  And few topics are more often discussed in legal circles than the efficacy of the *Chevron* regime.  *See, e.g.*, Thomas Merrill, *The* Chevron *Doctrine: Its Rise and Fall and the Future of the Administrative State* (2022); Christopher J. Walker, *Attacking* Auer *and* Chevron *Deference: A Literature Review*, 16 Geo.J.L. & Pub. Policy 103 (2018); Douglas H. Ginsburg and Steven Menashi, *Our Illiberal Administrative Law*, 10 NYU J.L. & Liberty, 475 (2016).

{¶ 22} Ohio's approach to deference is much harder to categorize.  Prior to *Chevron*, on only a couple occasions did this court directly address deference to an agency's legal determinations, and both dealt with deference to a federal agency's interpretation of federal law.  *See Jones Metal Prods. Co. v. Walker*, 29 Ohio St.2d 173, 180-182, 281 N.E.2d (1972) (deferring to EEOC guidelines to determine whether federal statute preempted state law); *State ex rel. Brown v. Dayton Malleable, Inc.*, 1 Ohio St.3d 151, 155-156, 438 N.E.2d 120 (1982) (looking to EPA's regulations to interpret Ohio law that implemented Federal Water Pollution Control Act).

{¶ 23} In a few earlier cases, we suggested that a long-standing administrative practice carries weight in the interpretive process.  *See Indus. Comm. v. Brown*, 92 Ohio St. 309, 311, 110 N.E. 744 (1915) ("Administrative interpretation of a given law, while not conclusive, is, if long continued, to be reckoned with most seriously and is not to be disregarded and set aside unless judicial construction makes it imperative so to do"); *In re Estate of Packard*, 174 Ohio St. 349, 356, 189 N.E.2d 434 (1963) ("Such long standing administration practices are not only persuasive, but should not be set aside unless judicial construction makes it imperative to do so").  But neither case can fairly be read as

setting forth a general rule of deference to agency interpretations. Rather, the principle set forth in those cases is in line with the long-held idea that "certain executive interpretations of legal text should receive 'respect' " because "an ambiguous legal text should be given its contemporaneous and customary meaning." Aditya Bamzai, *The Origins of Judicial Deference to Executive Interpretation*, 126 Yale L.J. 908, 941 (2017).

{¶ 24} It was not until after the 1984 *Chevron* decision that deference language began to appear in our cases on a regular basis. *See, e.g.*, *West Virginia v. Ohio Hazardous Waste Facility Approval Bd.*, 28 Ohio St.3d 83, 85, 502 N.E.2d 625 (1986). But such instances seemed more a matter of tossing in a few lines here and there to support a particular result than any application of an established doctrine. Fair to say, there is no "*Chevro*n moment" in this court's history. There has never been a case to systematically explain the contours of our deference doctrine, its theoretical justification, and its application in particular cases. To the contrary, if one parses our caselaw, one can find at least three different—and irreconcilable—formulations by this court of deference standards.

{¶ 25} *Mandatory deference.* In one direction, a line of cases holds that courts owe conclusive deference to "an agency's interpretation of a statute that it has the duty to enforce" so long as the interpretation is "reasonable." *Clark*, 99 Ohio St.3d 320, 2003-Ohio-3802, 791 N.E.2d 974, at ¶ 10. "[C]ourts," we have said, "when interpreting statutes, must give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise." *State ex rel. McLean v. Indus. Comm.*, 25 Ohio St.3d 90, 92, 495 N.E.2d 370 (1986). Statutory ambiguity plays no role here; the agency's interpretation of the law controls as long as it is reasonable. The Board relied on this precedent in prior stages of this case.

{¶ 26} *Ambiguity-triggered mandatory deference.* In a second direction runs a set of cases that resemble *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778, 81

L.Ed.2d 694, fn. 9. Under this line of authority, this court will conclusively defer to an agency's reasonable interpretation of an ambiguous statute. *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 57 ("the court must defer to [the secretary of state's] reasonable interpretation" of an ambiguous statute); *UBS Fin. Servs. v. Levin*, 119 Ohio St.3d 286, 2008-Ohio-3821, 893 N.E.2d 811, ¶ 34 (deferring to the tax commissioner's reasonable interpretation of a statutory ambiguity).

{¶ 27} *Permissive deference.* A third line of cases holds that a court "*may* rely on the expertise of a state agency." (Emphasis supplied.) *Ohio Partners for Affordable Energy v. Pub. Util. Comm.*, 115 Ohio St.3d 208, 2007-Ohio-4790, 874 N.E.2d 764, ¶ 11; *see also In re Complaint of Reynoldsburg*, 134 Ohio St.3d 29, 2012-Ohio-5270, 979 N.E.2d 1229, ¶ 19 (permitting reliance "on the expertise of a state agency in interpreting a" specialized law).

{¶ 28} Most recently, we have suggested that to the extent that deference may be appropriate in Oho, it is this permissive type. Just last year, we reiterated that only the judiciary has the ultimate authority to interpret the law. *State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, 166 Ohio St.3d 64, 2021-Ohio-3156, 182 N.E.3d 1142, ¶ 21. We also explained, "There is authority that supports the principle that when a statute is truly ambiguous in that there are two equally persuasive and competing interpretations of the law, it is *permissible* for a court to consider an administrative construction of the statute." (Emphasis supplied.) *Id.*

## B. Constitutional and statutory underpinnings

{¶ 29} The confused state of our caselaw and our failure to articulate any justification or consistent standard for agency deference suggests that we should take a step back and examine the matter in light of first principles. As we will explain, Ohio's system of separation of powers precludes any sort of mandatory deference to agency interpretations. Furthermore, the principal justification for mandatory deference that has been set forth in the federal courts—that deference is

appropriate because the legislature has delegated policy-making authority to an administrative agency—cannot be reconciled with Ohio law.

### 1. *The Ohio Constitution creates a system of separated powers*

{¶ 30} Like the federal Constitution, the Ohio Constitution creates a system of separation of powers. Ohioans have delegated to the General Assembly the "legislative power of the state," Ohio Constitution, Article II, Section 1; to the governor the "supreme executive power of this state," *id.* at Article III, Section 5; and to the courts the "judicial power of the state," *id.* at Article IV, Section 1.

{¶ 31} The "separation of powers is designed to preserve the liberty of all the people." *Collins v. Yellen*, __ U.S. __, 141 S.Ct. 1761, 1780, 210 L.Ed.2d 432 (2021). Indeed, the American experiment has long been thought to rest on the idea that " 'there can be no liberty, where the legislative and executive powers are united in the same person, or body of magistrates;' or, 'if the power of judging, be not separated from the legislative and executive powers.' " The Federalist No. 47, at 251 (James Madison) (Gideon Ed.2001), quoting Montesquieu, *The Spirit of Law* 181 (1748).

{¶ 32} Each branch of government "can exercise such power, and such only, as falls within the scope of the express delegation." *Scovill v. Cleveland*, 1 Ohio St. 126, 134 (1853). Separating "the several powers of enacting, construing, and executing laws" aids "the just exercise of the powers" and "prevent[s] abuse." *Chesnut v. Shane's Lessee*, 16 Ohio 599, 620 (1847) (Read, J., dissenting); *see* 3 Joseph Story, *Commentaries on the Constitution of the United States*, Section 519, 2-3 (1833) ("the three great powers of government * * * should for ever be kept separate and distinct").

{¶ 33} In carrying out their day-to-day obligations, the other branches of government must follow and apply the law—a task that entails some level of interpretation. But the ultimate authority to render definitive interpretations of the law has long been understood as resting exclusively in the judicial power. *Watson*

*v. Tax Comm.*, 135 Ohio St. 377, 380, 21 N.E.2d 126 (1939) ("It is the province of the courts only to construe and apply statutes"); *State ex rel. Davis v. Hildebrant*, 94 Ohio St. 154, 169, 114 N.E. 55 (1916) ("The construction of the laws and constitution is for the courts * * * "); The Federalist No. 78, at 404 (Alexander Hamilton) (Gideon Ed.2001) ("The interpretation of the laws is the proper and peculiar province of the courts"). Thus, only the judiciary may make "an interpretation [that] would be considered authoritative in a judicial proceeding." *Perez v. Mtge. Bankers Assn.*, 575 U.S. 92, 119, 135 S.Ct. 1199, 191 L.Ed.2d 186 (2015) (Thomas, J., concurring).

{¶ 34} The idea that a court must defer to an agency determination is difficult to reconcile with these separation-of-powers concepts. When a court defers to an agency's interpretation of the law, it hands to the executive branch the judicial authority "to say what the law is," *State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, 137 N.E.3d 1151, ¶ 31 (lead opinion).

{¶ 35} Mandatory deference also raises questions of judicial independence. In a case like this one, a court is charged with adjudicating a dispute between a government agency and a private party. But how can the judiciary fairly decide the case when it turns over to one party the conclusive authority to say what the law means? To do so would fly in the face of the foundational principle that "no man ought to be a judge in his own cause," *Monroeville v. Ward*, 27 Ohio St.2d 179, 191, 271 N.E.2d 757 (1971) (Corrigan, J., dissenting); the Federalist No. 10, at 44 (James Madison) (Gideon Ed.2001) ("No man is allowed to be a judge in his own cause; because his interest would certainly bias his judgment * * * "). For this reason, it has been said that mandatory deference creates "systematically biased judgment" in cases where a government agency is a party. Philip Hamburger, Chevron *Bias*, 84 Geo.Wash.L.Rev. 1187, 1211 (2016).

### 2. Ohio statutes do not support mandatory deference

{¶ 36} The theoretical justification for mandatory deference in the federal

12

courts is that the legislature has delegated policy-making authority to the administrative agency. The idea is that a statute's ambiguity constitutes " 'an implicit delegation from Congress to the agency to fill in the statutory gaps.' " *King v. Burwell*, 576 U.S. 473, 485, 135 S.Ct. 2480, 192 L.Ed.2d 483 (2015), quoting *Food & Drug Adm. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). It's easy to be skeptical of the notion: one might think it more likely that an ambiguous law is the result of poorly considered or hasty legislative action rather than a deliberate policy choice to surrender power to an agency. Nonetheless, implicit delegation is the "legal fiction" upon which the federal delegation doctrine rests. Jonathan H. Adler, *Restoring* Chevron*'s Domain*, 81 Mo.L.Rev. 983, 991 (2016).

{¶ 37} This implicit-delegation theory does nothing to resolve the separation-of-powers concerns outlined above. But it is still worth asking whether there is any indication that the Ohio General Assembly implicitly delegated to administrative agencies the authority to fill in the gaps of ambiguous statutes. After all, we have never set forth a theoretical justification for deference of our own, and much of our doctrine seems to be loosely pulled from the federal courts.

{¶ 38} The most relevant authority is the Ohio Administrative Procedures Act, R.C. 119.01 through 119.14. The act allows those adversely affected by many types of agency adjudications to appeal to the court of common pleas. R.C. 119.12(A)(1). The court may affirm the order of an agency only if it "is supported by reliable, probative, and substantial evidence and is *in accordance with law*." (Emphasis supplied.) R.C. 119.12(M). That standard—in accordance with law—is a de novo review standard. *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471, 613 N.E.2d 591 (1993) (court "must construe the law on its own"). De novo review, of course, is not deferential at all.

{¶ 39} Further evidence that the legislature did not intend to delegate interpretive authority to administrative agencies comes from R.C. 1.49, a statute by

which the legislature purports to set forth permissive considerations that a court may utilize in ascertaining legislative meaning. That provision provides: "*if a statute is ambiguous*, the court in determining the intention of the legislature, *may* consider among other matters * * * the administrative construction of the statute." (Emphasis supplied.) R.C. 1.49(F). One might question the authority of the General Assembly to tell the judiciary how to engage in its interpretive function. But for our purposes, there are two points to take from the statute. First, the legislature envisioned that a court *might* defer to an administrative agency only when a statute is ambiguous. And even then, deference is permissive, not mandatory.

{¶ 40} Thus, there is no reason in Ohio to construe ambiguity as an implicit delegation of power to administrative agencies to fill in statutory gaps. To the contrary, Ohio's statutory scheme supports the view that any judicial deference to administrative agencies is permissive rather than mandatory and may occur only when a statutory term is ambiguous.

### C. Ohio's deference standard

{¶ 41} Based on the foregoing, we now clarify how courts should interpret statutes administered by agencies.

### *1. We reject all forms of mandatory deference*

{¶ 42} First, it is never mandatory for a court to defer to the judgment of an administrative agency. Under our system of separation of powers, it is not appropriate for a court to turn over its interpretative authority to an administrative agency. But that is exactly what happens when deference is mandatory. When we say that we will defer to an administrative agency's reasonable interpretation of a statute, or its reasonable interpretation of an ambiguous statute, we assign to the agency a range of choices about statutory meaning. We police the outer boundaries of those choices, but within the range (e.g., reasonableness), the agency renders the interpretive judgment.

**{¶ 43}** In our constitutional system, it is exclusively the "the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. 137, 177, 2 L.Ed. 60 (1803). Thus, we reject the position advanced by the Board in prior stages of the litigation that the courts are required to defer to its reasonable interpretation of a statute. We similarly reject the First District's view that a court must defer to an agency's interpretation of an ambiguous statute.

*2.* ***A court may consider an agency interpretation based on its persuasive power if a statute is genuinely ambiguous***

**{¶ 44}** Second, we clarify that a court *may* consider an administrative agency's construction of a legal text in exercising its duty to independently interpret the law, but we add a few caveats. To start, an administrative interpretation should never be used to alter the meaning of clear text. If the text is unambiguous, the court should stop right there.

**{¶ 45}** Now assume that a court does find ambiguity and determines to consider an administrative interpretation along with other tools of interpretation. The weight, if any, the court assigns to the administrative interpretation should depend on the persuasive power of the agency's interpretation and not on the mere fact that it is being offered by an administrative agency. A court may find agency input informative; or the court may find the agency position unconvincing. What a court may not do is outsource the interpretive project to a coordinate branch of government.

**{¶ 46}** In this respect, deference in Ohio bears similarities to the rule announced by the United States Supreme Court in *Skidmore*:

> [T]he rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort

for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

{¶ 47} In assessing the persuasiveness of an agency interpretation, it is appropriate for a court to keep in mind the respective competencies of the agency and the judiciary. When it comes to interpretation of text involving common words used in their ordinary sense, there will rarely, if ever, be a need for a court to look to an agency interpretation. This task is routinely performed by courts and is well within the judiciary's core competence. On the other hand, in a specialized matter that involves technical meaning uniquely within the competency of the agency, the agency's expertise might prove helpful to a court in its interpretive task. *See Sarasota Mem. Hosp. v. Shalala*, 60 F.3d 1507, 1511 (11th Cir.1995). Even then, it remains the judiciary's role to independently interpret the law; the weight to be given the agency interpretation depends on its persuasiveness.

### 3. *We are not alone in revisiting our deference doctrine*

{¶ 48} It is worth noting that we are not alone in recalibrating our approach to agency deference. Roughly half the states in the Union review agency interpretations of the law de novo. Daniel Ortner, *The End of Deference: How States Are Leading a (Sometimes Quiet) Revolution Against Administrative Deference Doctrines* (2020), https://ssrn.com/abstract=3552321. A number of these states have recently adopted this standard. In Wisconsin, for example, its Supreme Court questioned whether "[a]llowing an administrative agency to authoritatively interpret the law" cedes "some part of the state's judicial" power to "the executive branch of government." *Tetra Tech EC, Inc. v. Wisconsin Revenue*

*Dept.*, 2018 WI 75, 382 Wis.2d 496, 914 N.W.2d 21, ¶ 43. The court answered that question yes and adopted a de novo standard to review agency determinations of questions of law. *Id.* at ¶ 84. So did the Utah Supreme Court when it reiterated that "agency decisions premised on pure questions of law are subject to non-deferential review for correctness." *Ellis-Hall Consultants v. Pub. Serv. Comm.*, 2016 UT 34, 379 P.3d 1270, ¶ 27. High courts in Arkansas, Delaware, Kansas, Michigan, and Mississippi have similarly revamped their deference doctrines lately, returning to de novo review. *Myers v. Yamato Kogyo Co.*, 2020 Ark. 135, 597 S.W.3d 613, 617; *Pub. Water Supply Co. v. DiPasquale*, 735 A.2d 378, 381 (Del.1999); *Cochran v. Dept. of Agriculture, Water Resources Div.*, 291 Kan. 898, 904, 249 P.3d 434 (2011); *SBC Michigan v. Pub. Serv. Comm.*, 482 Mich. 90, 103, 754 N.W.2d 259 (2008); *King v. Mississippi Military Dept.*, 245 So.3d 404, ¶ 12 (Miss.2018).

### III. TWISM MET THE LEGAL REQUIREMENTS TO PROVIDE ENGINEERING SERVICES

{¶ 49} We now return to the present dispute. The second proposition of law we accepted asserts: "R.C. 4733.16(D) does not preclude an engineering firm from designating an independent contractor as its professional-engineering manager."

{¶ 50} The question is whether TWISM has met the requirements to be authorized to provide professional engineering services. If so, the Board is compelled to grant TWISM a certificate of authorization. R.C. 4733.16(E) ("shall issue"). The relevant requirements are set by the General Assembly, not by the Board. *Id*. ("the requirements of this chapter"). The facts are undisputed, and we review an agency's legal determinations de novo.

{¶ 51} TWISM was required to designate a registered professional engineer "as being responsible for and in responsible charge of the professional engineering * * * services and decisions" it renders. R.C. 4733.16(D). That designee must be a "full-time" partner, manager, member, officer, or director for TWISM. *Id*.

{¶ 52} In the administrative proceedings and lower courts, the Board maintained that Cooper cannot work "full-time" as an independent contractor—only an employee can satisfy R.C. 4733.16(D)'s full-time requirement. Now, the Board argues that Cooper, in his independent-contractor capacity, cannot possibly be "responsible for and in responsible charge of" TWISM's engineering services. Both arguments rely on the legal status of an independent contractor.

## A. An independent contractor may be a full-time manager

{¶ 53} Throughout the administrative proceedings and in both the common pleas court and the court of appeals, the Board insisted that an independent contractor could not be a full-time manager of a certified engineering firm. But it has offered precious little textual support for such a reading. The Board's own regulations define "full time" as including someone who works all the engineering hours of the firm, and there is no dispute that Cooper meets this requirement. *Accord Austintown Ambulatory Emergency Room v. Mansour*, 7th Dist. Mahoning No. 10 MA 152, 2011-Ohio-4559, ¶ 2 ("Appellant was a full-time independent contractor medical director of the hospital's emergency room"); *Gibson v. Gibson*, 2d Dist. Montgomery No. 28171 2019-Ohio-1799, ¶ 15 ("driving as an independent contractor * * *[,] Robert worked full time").

{¶ 54} And there is nothing in the term "manager" that requires someone to be a W-2 employee instead of an independent contractor. In common parlance, a manager is simply "one that manages" or "a person that conducts, directs, or supervises something." *Webster's Third New International Dictionary* 1372 (2002); *see also* R.C. 1706.01(O) (defining "manager" for purposes of the limited-corporate-liability statute as "any person designated * * * with the authority to manage all or part of the activities or affairs of the limited liability company on [its] behalf"). In today's world, it is not at all uncommon for a manager to be an independent contractor rather than a W-2 employee. 2021-Ohio-3665 at ¶ 26 (collecting cases). Indeed, the Board now concedes that "managers can be

independent contractors rather than employees."

{¶ 55} Thus, once the idea that we should defer to the Board's interpretation is stripped away, there is little to support the result reached by the Board in its administrative proceeding and by the court of appeals. An independent contractor like Cooper can be a full-time manager.

**B. An independent contractor may be responsible for and in charge of engineering activities and decisions**

{¶ 56} Perhaps recognizing the textual implausibility of the argument that it relied on below, the Board has advanced a different, and more nuanced, argument before this court. Now it says that "independent contractors may be managers, but they cannot be managers who are in responsible charge of and responsible for the hiring entity's work." Because this argument is different from the one presented below, there is a good argument that it has been forfeited. Nonetheless, because TWISM has not raised a forfeiture argument and because the Board's new argument is easily dealt with, we will proceed to address it.

{¶ 57} TWISM's operating agreement provides that Cooper, as manager, is "responsible for and in responsible charge of the professional engineering activities and decisions for TWISM Enterprise, LLC." The Board contends that it is legally impossible for Cooper to satisfy those conditions. "Responsible for" and "in responsible charge of," the Board says, are terms of art with distinct, technical meanings in the engineering profession. Their specialized meanings, adds the Board, involve a degree of "liability," "supervision[,] and control" that only an employee, never an independent contractor, could possess.

{¶ 58} But if "responsible charge of" translates to "supervision and control" and "responsible for" means "liable for," then those specialized meanings parallel ordinary meaning. "In charge" is defined as "having the control or custody of something" or "under supervision." *Webster's* at 377; *accord* Ohio Adm.Code 4733-39-02(A) (defining "responsible charge" as "being in control of, accountable

for"). "Responsible," in law, means "liable or subject to legal review or in the case of fault to penalties." *Webster's* at 1935; *Black's Law Dictionary* 1097, 1569 (2019) ("liability" and "responsibility" are synonymous).

{¶ 59} The Board contends that Cooper cannot be in responsible charge as an independent contractor because TWISM lacks the ability to control the mode and manner of his work. But that misses the point. The applicable language in R.C. 4733.16(D) requires the registered engineer to be in responsible charge of the engineering activities of the firm; it says nothing about the firm's control over the manager. Quite simply, the Board's concern for TWISM's control over Cooper is unconnected to the text of R.C. 4733.16(D).

{¶ 60} And therein lies rub: what the Board now presents are simply policy arguments that it tries to dress up as statutory ones. It says that allowing a firm to be managed by an independent contractor creates potential problems because it inhibits the firm's ability to directly control the engineering activities of the firm. Similarly, the Board says that if an independent contractor is responsible for the firm's work, tort claimants may face barriers in recovering damages. There are reasons to be skeptical of such arguments. They ignore the ability of private contracting parties—like TWISM and Cooper—to freely negotiate the terms of their agreement, including the allocation of liabilities, and they also fail to account for the availability of insurance coverage. But for our purposes, the critical point is that these are arguments why an independent contractor should not be allowed to be a firm's manager, not arguments about whether R.C. 4733.16(D) allows a firm to hire an independent contractor as manager. They are arguments about what the Board would like the statute to say, not about what it does say. And for this reason, they are best addressed to the General Assembly.

{¶ 61} Indeed, if the General Assembly meant to require an employment relationship, it easily could have done so. The General Assembly specified whom a firm may designate as professional engineer: "full-time partners, managers,

members, officers, or directors." *Id*. We see little reason to read an additional "who" requirement into "in responsible charge of," when the law already speaks directly to who may hold the designation.

{¶ 62} This court expects a statutory requirement to be "written * * * into the statute." *Wheeling Steel Corp. v. Porterfield*, 24 Ohio St.2d 24, 27-28, 263 N.E.2d 249 (1970). Inasmuch as the Board believes that a W-2 employment relationship is necessary, that requirement does not stem from R.C. 4733.16(D). That provision requires TWISM to designate a registered professional engineer who is a "full-time * * * manager[]" and is "responsible for and in responsible charge of" its engineering activities. Because TWISM has "satisfied the requirements," R.C. 4733.16(E), it is entitled to a certificate of authorization to provide professional engineering services. When the Board denied TWISM's application, it did not act "in accordance with law." R.C. 119.12(M).

## IV. CONCLUSION

{¶ 63} TWISM met the requirements for a certificate of authorization to practice engineering. The Board reads the law differently, but Ohio courts are not compelled to adopt that agency's preferred reading of the law—unless, of course, its reading is the best one. Here, the Board's reading is second best. The judgment of the court of appeals is reversed, and the matter is remanded to the Board for proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

KENNEDY, FISCHER, and DONNELLY, JJ., concur.

O'CONNOR, C.J., and STEWART and BRUNNER, JJ., concur in judgment only.

---

Pacific Legal Foundation, Oliver J. Dunford, and John F. Kerkhoff; and Wood + Lamping, L.L.P., and Dale A. Stalf, for appellant.

Michael J. Hendershot, Chief Deputy Solicitor General, Samuel C.

Peterson, Deputy Solicitor General, and Shelli R. Brock and Brian R. Honen, Assistant Attorneys General, for appellee.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Mathura J. Sridharan, Deputy Solicitor General, in support of neither party for amicus curiae Attorney General Dave Yost.

James Bart Leonardi, L.L.C., and James Bart Leonardi; and Casey Norman, urging reversal for amicus curiae New Civil Liberties Alliance.

Jay R. Carson and Robert Alt, urging reversal for amicus curiae Buckeye Institute.

_____