[Cite as *Lucas v. Ohio State Dental Bd.*, 2024-Ohio-4986.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ROBERT LUCAS, M.D., D.M.D., | : | APPEAL NO. C-240272 |
| | | TRIAL NO. A-2202809 |
| Appellant, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N.* |
| OHIO STATE DENTAL BOARD, | : | |
| | | |
| Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 16, 2024

*Lindhorst & Dreidame Co., LPA, Michael F. Lyon* and *Cullen P. Rooney,* for Appellant,

*Dave Yost,* Ohio Attorney General, and *Katherine J. Bockbrader*, Assistant Attorney General, for Appellee.

**BOCK, Presiding Judge.**

{¶1} In this administrative appeal, appellant Dr. Robert Lucas challenges the Ohio State Dental Board's ("the Board") indefinite suspension of his license to practice dentistry. After one of Lucas's patients passed away following a surgery, the Board charged Lucas with two violations of the standard of care. Though the Board accepted the hearing examiner's finding of fact that Lucas was not at fault for the patient's death, the Board increased the hearing examiner's recommended sanction, in part based on "the outcome of the surgery."

{¶2} We agree with Lucas that the record did not support the Board's increasing the sanction based on the outcome of the surgery as there was no causation established in this case. But because the Board independently cited "the seriousness of the situation" as a basis for increasing Lucas's sanction, and that reason was supported by the record, we hold that the trial court did not abuse its discretion in affirming the Board's order.

## I. Facts and Procedure

### A. Facts

#### 1) Patient 1 passes away following surgery

{¶3} Patient 1, a 22-year-old male, died from complications that occurred after he was sedated in preparation for Lucas to perform surgery to remove his wisdom teeth.

{¶4} Lucas is a licensed medical doctor and is board certified in dentistry, oral and maxillofacial surgery, and anesthesiology. In November 2018, Patient 1 consulted with Lucas to extract his wisdom teeth. At the initial consultation, Patient 1

disclosed that he took medications for his heart, cholesterol, and diabetes. Patient 1 did not indicate any history of heart disease or high blood pressure.

{¶5} In December 2018, Patient 1 arrived at Lucas's office for his wisdom-teeth surgery. The surgery required general anesthesia.

{¶6} Daniel Boone, a paramedic employed by Lucas as a dental anesthesia assistant, and Tricia Flights, a dental assistant, assisted Lucas in the surgery. Boone performed the initial preparations for the surgery, including placing Patient 1's IV line. Lucas was not present in the room. Before sedating Patient 1, Boone noticed that Patient 1's blood pressure was "unusually high"—the reading was 240/161. Boone and Flights, thinking that the reading may have been incorrect, took a new blood-pressure reading which, at 245/145, was also high. Despite these high readings, Boone administered the sedation medication. Boone did not record what time he administered the medication.

{¶7} Shortly thereafter, Lucas entered the room. Though observing that Patient 1's blood pressure was high, Lucas intended to proceed with the planned surgery. But soon after Lucas entered the room, Patient 1 began having complications, including cardiac issues and trouble breathing. Lucas administered a reversal medication to counter the sedation medication. Lucas instructed his staff to call emergency medical services, which arrived and transported Patient 1 to the emergency department at West Chester Hospital, where Patient 1 died a few hours later.

**2) The Board indefinitely suspended Lucas's license**

{¶8} After Patient 1's death, Lucas self-reported to the Board. The Board gave Lucas notice that it was charging him with two violations of the standards of care: (1) failing to recognize Patient 1's high blood pressure and continuing with the procedure

3

despite the high readings, and (2) failing to contemporaneously document all events that took place during the emergency.

{¶9} After a hearing, the hearing examiner issued his recommendation. He concluded that Lucas violated both standards of care. In the hearing examiner's conclusions of law, he stated that "there is no direct evidence that correlates the administration of the medication to [Patient 1's] resulting episode," and did "not conclude that [Lucas] was responsible for Patient #1's passing." He recommended a one-year suspension and ten hours of continuing education in addition to that required by statute.

{¶10} The Board adopted the hearing examiner's findings of fact and conclusions of law. But it modified the recommended sanction and imposed an indefinite suspension. The Board specified that to be reinstated, Lucas had to serve at least three months of the suspension and complete 60 hours of continuing education. The Board explained that the modification was "due to the seriousness of the situation and the outcome of the surgery."

## B. Procedural history

{¶11} Lucas filed this administrative appeal from the Board's order suspending his dental license. The magistrate's decision affirmed the Board's sanctions. Lucas filed objections. The trial court overruled Lucas's objections and adopted the magistrate's decision. Lucas appealed.

## II. Law and Analysis

{¶12} In his sole assignment of error, Lucas argues that the trial court abused its discretion in affirming the Board's decision.

## A. Standard of review

{¶13} This court reviews the trial court's judgment in an administrative appeal for an abuse of discretion. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). An abuse of discretion is "not merely an error of judgment." *Id.* Instead, a trial court abuses its discretion when its judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Absent a finding of an abuse of discretion, an appellate court may not substitute its own judgment for the trial court's judgment. *Pons* at 621. But this court's review on questions of law is de novo. *Bartchy v. State Bd. of Edn.*, 2008-Ohio-4826, ¶ 43.

## B. Administrative appeals

{¶14} R.C. 119.12 governs appeals from administrative agencies' orders. A trial court must uphold the agency's order if it finds, "upon consideration of the entire record . . . that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12(N). "In the absence of this finding," the court may "reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." *Id.*

{¶15} The trial court is required to conduct "two inquiries: a hybrid factual/legal inquiry and a purely legal inquiry." *Bartchy* at ¶ 37. First, in determining if the order is supported by reliable, probative, and substantial evidence, the trial court must defer to the agency's findings of fact. *Id.* But the agency's findings "are by no means conclusive," and the trial court may reverse, vacate, or modify the order where it finds, based on its view of the evidence, that "there exist[s] legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary

5

to its determination." *Id.*, quoting *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 470-471 (1993). Courts must defer to a medical board's interpretation of the profession's technical and ethical requirements. *Pons* at 621.

**{¶16}** Second, the trial court must ensure that the agency's order is "in accordance with the law," and in doing so, the trial court construes the law on its own. *Ohio Historical Soc.* at 471; *see also TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers and Surveyors*, 2022-Ohio-4677, ¶ 3 ("the judiciary, not administrative agencies, [] make[s] the ultimate determination about what the law means. Thus, the judicial branch is never required to defer to an agency's interpretation of the law.").

**{¶17}** When sufficient evidence and the law support an agency's decision, the trial court "lacks authority to review the agency's exercise of discretion, even if its decision is 'admittedly harsh.'" *Capital Care Network of Toledo v. Ohio Dept. of Health*, 2018-Ohio-440, ¶ 25; *see Henry's Cafe, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959), paragraph two of the syllabus (where an agency's "order is supported by reliable, probative and substantial evidence, . . . it can only affirm" that order).

## C. R.C. 4715.30 disciplinary action against dentists

**{¶18}** The Board is authorized to discipline a licensed dentist for:

Providing or allowing dental hygienists, expanded function dental auxiliaries, or other practitioners of auxiliary dental occupations working under the certificate or license holder's supervision, . . . to provide dental care that departs from or fails to conform to accepted standards for the profession, whether or not injury to a patient results.

R.C. 4715.30(A)(9).

6

{¶19} If the Board finds that a ground for discipline exists, it may sanction the dentist. R.C. 4715.30(C).

### D. The trial court did not abuse its discretion

{¶20} Lucas does not challenge the hearing examiner's findings that he violated the standards of care or the Board's acceptance of those findings. Nor does he argue that the Board imposed a sanction that it generally would not be authorized to impose. He also does not take issue with the magistrate's determination that the board's findings were supported by reliable, probative, and substantial evidence.

{¶21} Instead, Lucas challenges the Board's modifying the hearing examiner's recommended sanction. Lucas specifically points to the Board's explanation for the modification in which the Board wrote, "The rationale for the modification is the following: the Board in its expertise finds that due to the seriousness of the situation *and the outcome of the surgery*, a suspension period, continuing education and a probationary period was appropriate." (Emphasis added.) Lucas argues that the Board's decision to increase his penalty based in part on "the outcome of the surgery" means that the Board increased the penalty due to Patient 1's death, despite the hearing examiner's statement that there was no evidence that Lucas caused his death.

{¶22} The magistrate stated that while "the Board's language . . . could be interpreted to reference the death of the Patient[,] it could also be as reasonably . . . interpreted as referring to Lucas'[s] lack of standard of care and proof of correcting those standards of care as they relate to the sedation and record keeping related to those sedation procedures." Ultimately, the magistrate concluded that the Board was not required to adopt the hearing examiner's recommended sanction and that the sanction employed by the Board was otherwise authorized by law. The trial court

7

adopted the magistrate's decision without additional analysis and denied Lucas's objections.

{¶23} We agree with Lucas that the Board's reference to the "outcome of the surgery" cannot reasonably be interpreted as referring to anything other than Patient 1's emergency medical condition and death. At the hearing, Lucas presented testimony that Patient 1's medical emergency and death were not caused by the administration of sedation medication. In addressing this evidence and argument, the hearing examiner noted:

> While perhaps true, and there is no direct evidence that correlates the administration of the medication to his resulting episode, that argument misses the point. They ignore that the standard of care was not observed during this procedure. Indeed, had Patient #1's blood pressure been properly monitored, and had Respondent's office obtained better records regarding Patient #1's medical history, it is quite possible that the results would have been dramatically different, as his condition could have been more promptly and appropriately addressed.

{¶24} While the hearing examiner found that there was a possibility that Lucas was at fault, he did not determine that Patient 1 would have survived had Lucas not violated the standards of care. There was no evidence of causation before the Board upon which the Board could have relied to increase Lucas's sanction based on "the outcome of the surgery."

{¶25} But the Board's reason for increasing Lucas's sanction was not limited to "the outcome of the surgery." Instead, it cited "the seriousness of the situation."

8

Lucas acknowledges that this language reasonably can be interpreted to refer to "the lack of standard of care during the procedure."

{¶26} We see no reason to read the Board's stated reasons as conjunctive. The Board relied on two independent reasons for modifying the sanction. And there is no dispute that the Board's sanction is authorized by law. Courts are not permitted to substitute their judgment for that of the medical board regarding the appropriate sanction, provided the Board's decision was supported by reliable, probative, and substantial evidence and was in accordance with the law. *See Henry's Cafe, Inc.*, 170 Ohio St. 233 (1959), paragraph two of the syllabus. The trial court determined that the Board's decision was supported by the evidence, and we agree.

{¶27} Because Lucas does not challenge one of the Board's independently stated reasons for modifying his penalty, he cannot demonstrate that the order was not in accordance with the law. We hold that the trial court did not abuse its discretion in affirming the Board's order.

{¶28} We overrule Lucas's assignment of error.

### III.    Conclusion

{¶29} For the foregoing reasons, we overrule Lucas's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.